**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 7 |
| | ) |
| THE BROWN SCHOOLS, et al., | ) Case No. 05-10841 |
| | ) |
| Debtors. | ) |
| _____ | ) |
| | ) |
| GEORGE L. MILLER, Chapter 7 | ) Adversary No. 06-50861 (MFW) |
| Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| McCOWN DE LEEUW & CO., INC.; | ) |
| KIDS ACQUISITION, LLC; McCOWN | ) |
| DE LEEUW & CO. III, L.P.; MDC | ) |
| MANAGEMENT COMPANY, III, L.P.; | ) |
| MDC MANAGEMENT COMPANY, IIIA, | ) |
| L.P.; McCOWN DE LEEUW & CO. III | ) |
| (EUROPE), L.P.; McCOWN DE LEEUW | ) |
| & CO. III (ASIA), L.P.; GAMMA | ) |
| FUND LLC, McCOWN DE LEEUW & CO. | ) |
| IV, L.P.; McCOWN DE LEEUW & CO. | ) |
| IV ASSOCIATES, L.P.; DELTA FUND | ) |
| LLC; MDC MANAGEMENT COMPANY IV, | ) |
| LLC; McCOWN DE LEEUW & CO., | ) |
| LLC; GEORGE McCOWN; ROBERT | ) |
| HELLMAN; ROBERT J. NAPLES; and, | ) |
| WINSTEAD SECHREST & MINICK, | ) |
| P.C., | ) |
| | ) |
| Defendants. | ) |

**OPINION**[1]

_____

    [1] In this Opinion, the Court makes no findings of fact and
conclusions of law pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.  Fed. R. Bankr. P. 7052 (applying Fed. R.
Civ. P. 52 (a) which provides that "[f]indings of fact and
conclusions of law are unnecessary on decisions of motions under
Rules 12 . . . .").  The facts recited are those alleged in the
Complaint.

Before the Court are the Motions of the MDC Defendants[2], Winstead Sechrest & Minick, P.C. ("Winstead"), and Robert J. Naples ("Naples") for dismissal of the complaint filed against them by the trustee.  For the reasons stated below, the Court will grant the Motions in part.

I.    BACKGROUND

In 1997 and 1998, the Debtors[3] recapitalized.  During the recapitalization process, McCown De Leeuw & Co., Inc. ("MDC"), through an affiliate, acquired more than 65% of the stock of The

---

[2]    The MDC Defendants are collectively McCown De Leeuw & Co., Inc. ("MDC") and the following of its affiliates: Kids Acquisition, LLC, McCown De Leeuw & Co., III, L.P., MDC Management Company III, L.P., MDC Management Company IIIA, L.P., McCown De Leeuw & Co. III (Europe), L.P., McCown De Leeuw & Co. III (Asia), L.P., Gamma Fund LLC; McCown De Leeuw & Co. IV, L.P., McCown De Leeuw & Co. IV Associates, L.P., Delta Fund, LLC, MDC Management IV, LLC, McCown De Leeuw & Co., LLC, George McCown, and Robert Hellman.  George McCown is the founder of MDC and was a director of The Brown Schools, Inc.  Robert Hellman was the CEO of MDC and a director of The Brown Schools, Inc.

[3]    The Debtors are: The Brown Schools, Inc. (the "Parent Debtor"), The Brown Schools Management Corporation, The Brown Schools Education Corporation, CEDU Education, Inc. f/k/a CEDU Family of Services, Inc., CEDU School, Inc., North American Boarding Schools, Inc., Rocky Mountain Academy, Inc., Northwest Academy, Inc., The Brown Schools of Florida, Inc., The Brown Schools of Puerto Rico, Inc., CEDU Holdings, Inc., CEDU Business Corporation, Austin TBS, Inc., The Brown Schools Business Corp., Healthcare Living Centers, Inc., Healthcare Rehabilitation Center of Austin, Inc., The Brown Schools Behavioral Health System, Inc., Travis TBS, Inc., The Brown School of San Juan, Inc., Healthcare AHGI, Inc., Elmwood Management Company, Inc., Glenwood Management Company, Inc., TBS Holdings, Inc., and TBS Administrative Corp.

Brown Schools, Inc. (the "Parent Debtor") for $63 million.  MDC,
through two affiliates, entered into an Advisory Services
Agreement with the Debtors to provide financial, advisory, and
consulting services.  MDC was to receive the greater of $400,000
or .3% of the Debtors' net revenues (capped at $800,000) as
compensation for its services.  As part of the recapitalization,
the Debtors also obtained loans and lines of credit totaling $100
million from various banks, including Credit Suisse First Boston
(collectively "CSFB").  CSFB was granted a security interest in
substantially all the Debtors' assets.

In October 1999, the Debtors obtained an additional $15
million in working capital from Teachers Insurance and Annuity
Association of America ("TIAA") in exchange for notes in the
principal amount of $15 million at 18% interest and warrants to
purchase 40,000 shares of the Debtors' stock.  The TIAA notes
were not secured and were subordinate to the CSFB debt.

In 2000, eight of the MDC companies loaned the Debtors a
total of $5 million in exchange for notes in the principal amount
of $5 million and warrants to purchase 74,000 shares of the
Debtors' stock.  The notes were not secured, were subordinate to
the CSFB and TIAA debt, and were issued at an interest rate of
12%, payable-in-kind (the "PIK Notes").

In December 2000, upon default of the CSFB debt, the Debtors
restructured the CSFB debt.  As part of the restructuring, the

3

Debtors sold $32 million in assets.  The proceeds from the asset
sale were used to reduce the balance of the CSFB debt.  CSFB
increased the interest rate on the remaining debt.  The Debtors
raised additional capital ($7.5 million) through sale of
additional PIK Notes to MDC.

As of April 7, 2003, the Debtors owed approximately (i) $47
million on the CSFB debt; (ii) $18.4 million in principal and
interest on the TIAA notes; (iii) $12.5 million plus interest on
the PIK Notes; and (iv) $22 million to other creditors.  Further,
the Debtors were defendants in over thirty lawsuits.

During April 2003, the Debtors sold all their residential
treatment centers to third parties for a total of $64 million.
The proceeds were used to satisfy the CSFB debt in full and to
pay $907,000 to the Debtors' financial advisor, $578,000 to its
counsel, $278,000 to CSFB's legal and financial advisors, and
$1.7 million to MDC.  The Trustee alleges that MDC performed no
compensable services in exchange for the $1.7 million payment.
(Complaint at ¶ 49.)

In May 2003 the Debtors hired Winstead.  In July 2004, the
Debtors restructured their debt again (the "July 2004
Restructuring").  As part of the July 2004 Restructuring, TIAA
received a first lien and MDC a second lien on substantially all
the Debtors' assets.  TIAA waived all defaults on the TIAA notes
which were restructured into four tranches in the aggregate of

4

$20.95 million.  The Debtors also agreed to sell $7 million in assets to reduce the TIAA debt.  Subsequently, TIAA and MDC entered into an Intercreditor Agreement.  Under the Intercreditor Agreement, MDC was given a participation in the amounts to be received by TIAA under two of the four tranches.  The Debtors liquidated more assets and paid more than $18 million to TIAA, which TIAA shared with MDC.

On March 25, 2005, the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code.  George L. Miller was appointed trustee (the "Trustee").

On September 26, 2006, the Trustee filed a Complaint against the MDC Defendants, Naples (a director of the Parent Debtor), and Winstead.  On October 3, 2006, the Complaint was amended.  The Complaint contains counts against all Defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent and/or voidable transfers, deepening insolvency, civil conspiracy, and declaratory relief.  There is a separate count for corporate waste against the MDC Defendants and Naples.

On November 27, 2006, the MDC Defendants and Winstead filed Motions to dismiss the Complaint.  On December 1, 2006, Naples filed a Motion to dismiss and a joinder in the other Motions. The Motions are opposed by the Trustee.  Briefing is complete, and the matters are now ripe for decision.

II.   <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157 (b)(1).  This proceeding is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (F), (H), (K) & (O).

III. <u>DISCUSSION</u>

The Defendants move for dismissal of the claims against them for failure to state fraud with particularity, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted under Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, which are made applicable to adversary proceedings by Rules 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure.

A.   <u>Standard of Review</u>

1.   <u>Rule 9(b) Dismissal</u>

The plaintiff must allege actual fraud with particularity. Fed. R. Civ. P. 9(b).  The facts alleged in the complaint must be stated with sufficient particularity to notify the defendant of the charges against him so that he may adequately prepare an answer.  <u>In re Global Link Telecom Corp.</u>, 327 B.R. 711, 718 (Bankr. D. Del. 2005).  Fair notice requires more than mere parroting of statutory language.  <u>Id.</u>  <u>See also</u> <u>In re Circle Y of Yoakum, Texas</u>, 354 B.R. 349, 356 (Bankr. D. Del. 2006).  "A

bankruptcy trustee, as a third party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud." In re Am. Bus. Fin. Servs., Inc., No. A-06-50826, 2007 WL 528859, at *3 (Bankr. D. Del. Feb. 13, 2007).

      2.  Rule 12(b)(6) Dismissal

A Rule 12(b)(6) motion to dismiss is designed to test the legal sufficiency of the factual allegations in the plaintiff's complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). All well-pleaded allegations in the complaint are accepted as true and are viewed in the light most favorable to the plaintiff. In re Rockefeller Ctr. Props., Inc. Secs. Litig., 311 F.3d 198, 205-06 (3d Cir. 2002). The Court is not required to accept legal conclusions or unsupported assertions. Papasan v. Allain, 478 U.S. 265, 286 (1986); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The Court may take judicial notice of certain facts. See, e.g., S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."). A Rule 12(b)(6) motion will be granted if "it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Emerson v. Thiel Coll., 296 F.3d 184, 188

(3d Cir. 2002) ("A complaint will withstand an attack under [Rule] 12(b)(6) if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery.")  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

    B.   MDC Defendants' and Naples' Motions to Dismiss

       1.  Standing

The MDC Defendants and Naples argue that to the extent the Trustee asserts claims on behalf of creditors, those claims should be dismissed for lack of standing. See, e.g., Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 347 (3d Cir. 2001) ("[A] bankruptcy trustee has no standing to assert claims on behalf of an estate's creditors.").

In the Complaint, the Trustee asserts that (i) MDC's wrongful prolongation of the Debtors resulted in the unlawful preference and enrichment of MDC at the expense of the Debtors and their creditors; (ii) in connection with the 2004 restructuring, MDC hindered, delayed, and defrauded creditors, including plaintiffs with pending lawsuits against the Debtors; (iii) all Defendants caused inter-company transfers amongst the Debtors resulting in less money for creditors; (iv) the Defendants breached fiduciary duties to the Debtors and

creditors; and (v) the deepening insolvency and liquidation of the Debtors outside bankruptcy was an effort to prefer and enrich MDC at the expense of the Debtors and their creditors. (Complaint at ¶¶ 44, 50, 64, 70, and 92.)

Although the Trustee has included language that alleges creditors were damaged, the Trustee in every instance also asserts that the Debtors were damaged.  (Complaint at ¶¶ 44, 50, 64, 70, 71 and 92.)  Even though the Trustee's claims incidentally implicate creditors' rights, the Trustee has standing to assert the claims of the Debtors.  See, e.g, R.F. Lafferty, 267 F.3d at 348-49 (concluding that when considering the issue of a trustee's standing "it is irrelevant that, in bankruptcy, a successfully prosecuted cause of action leads to an inflow of money to the estate that will immediately flow out again to repay creditors").  Consequently, the Court will not dismiss the counts against the MDC Defendants and Naples on standing grounds.

2.   Breach of Fiduciary Duty

The Trustee asserts a breach of fiduciary duty count against all the MDC Defendants and Naples.  The Trustee alleges that the "individual Defendants acted on their own behalf and as agents for and on behalf of the entity Defendants to commit and participate in the wrongs alleged herein."  (Complaint at ¶ 66.) The Trustee specifically alleges that "MDC used its power as the

majority and controlling shareholder of [the Parent Debtor] to
cause its representatives to serve on the Board of Directors of
[the Debtors] and on the executive committee of that Board . . .
."  (Complaint at ¶ 26.)  The Trustee alleges that through this
control of the Debtors' operations, the MDC Defendants and Naples
engaged in self-dealing, wrongfully prolonged the life of the
Debtors to enrich themselves at the expense of creditors when the
duties of "good faith, honest governance and [loyalty]" required
an immediate bankruptcy filing and liquidation.  (Id. at ¶¶ 43-
44.)  The Trustee further alleges that the MDC Defendants and
Naples made fraudulent, preferential, and voidable transfers to
themselves and conspired with TIAA to obtain a first security
interest in the Debtors' assets.  The Trustee asserts that these
actions were a breach of their fiduciary duties and resulted in
damages of more than $20 million.  (Id. at ¶¶ 1-2, 27, 43-71.)

a.  Exculpation Clause

The MDC Defendants and Naples argue four grounds for
dismissal of the breach of fiduciary duty count.  The MDC
Defendants and Naples first contend that the Debtors' charter
included an exculpation clause which insulates the directors from
liability for good faith breaches of the duty of care.  See
Certificate of Incorporation of The Brown Schools, Inc. at ¶ 13
(limiting directors' liability for breach of fiduciary duty to
the extent allowed by Delaware General Corporation Law).  See

10

<u>also</u> 8 Del. Code Ann. § 102(b)(7) (2006) (allowing limitation of director liability for fiduciary duties except for the duty of loyalty, bad faith, intentional or knowing illegal conduct, or any transaction from which the director derived an improper personal benefit).

The Trustee responds that the defense of exculpation is an affirmative defense which the Court cannot consider on a motion to dismiss.  <u>See, e.g.</u>, <u>In re Tower Air, Inc.</u>, 416 F.3d 229, 242 (3d Cir. 2005) (noting that "affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)"); <u>Deckard v. General Motors Corp.</u>, 307 F.3d 556, 560 (7th Cir. 2002) (concluding that granting a motion to dismiss based on an affirmative defense is improper because "the existence of a defense does not undercut the adequacy of the claim.").

The Court agrees with the Trustee.  The exculpation clause is an affirmative defense and the determination of the viability of that defense is not proper at this stage.  <u>Tower Air</u>, 416 F.3d at 238, 242 (stating that exculpation provisions are affirmative defenses that generally cannot form the basis of a Rule 12(b)(6) dismissal).

       b.   <u>Business Judgment Rule</u>

The Defendants also argue that the business judgment rule applies to and insulates the directors' decisions from attack. <u>See, e.g.</u>, <u>McMullin v. Beran</u>, 765 A.2d 910, 916 (Del. 2000) ("The

business judgment rule is a [rebuttable] presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." (internal quotations and citations omitted)).

The Trustee responds that the application of the business judgment rule is also an affirmative defense which cannot form the basis for dismissal of the Complaint. See, e.g., Tower Air, 416 F.3d at 242; Deckard, 307 F.3d at 560; In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 52 (Del. 2006) (explaining that the business judgment rule "can be rebutted if the plaintiff shows that the directors breached their fiduciary duty of care or of loyalty or acted in bad faith.")

The Court agrees with the Trustee. The application of the business judgment rule is an affirmative defense, the determination of which is not proper at the motion to dismiss stage. Tower Air, 416 F.3d at 238, 242.

c. Insider Status

The MDC Defendants argue that they were not "insiders" and thus were not fiduciaries. The Trustee alleges, however, that the MDC entities, through one of their affiliates, acquired 65% of the stock of the Parent Debtor. (Complaint at ¶ 27.) All MDC entities were owned and controlled by MDC. (Id. at 8.)

12

The Court concludes that the Trustee's allegation that the MDC entities, collectively, were controlling shareholders of the Parent Debtor is sufficient to state insider status and a fiduciary relationship.  See, e.g., In re Hechinger Inv. Co. of Del., 274 B.R. 71, 93 (3d Cir. 2002) (stating that controlling shareholders are fiduciaries).  See also 11 U.S.C. § 101(31).

### d.    Statute of Limitations

The MDC Defendants further contend that the Complaint should be dismissed as to any activities that occurred beyond the three-year statute of limitations (or prior to March 25, 2002).  See, e.g., 10 Del. Code Ann. § 8106 (2006) (providing for three-year statute of limitations for actions arising out of fiduciary relations); In re Fruehauf Trailer Corp., 250 B.R. 168, 184 (D. Del. 2000) (same).  The Trustee responds that the statute of limitations does not preclude the Complaint because the events occurred after April 2003.

The statute of limitations for the breach of fiduciary count is three years and the events that allegedly triggered a breach of fiduciary duty began in April 2003.  The statute of limitations had not expired at the time of the bankruptcy petition on March 25, 2005.  Therefore, pursuant to section 108(a) of the Bankruptcy Code, the Trustee had until the later of the end of the statute of limitations period or two years after

the bankruptcy petition to file such a claim.[4]  The claim was
filed within two years of the petition date.  Accordingly, the
Court concludes that the claim is within the statute of
limitations and the Complaint should not be dismissed on this
ground.

       3.  <u>Aiding and Abetting a Breach of Fiduciary Duty</u>

The MDC Defendants and Naples argue that the aiding and
abetting a breach of fiduciary duty count must be dismissed
because (1) the claim may only be asserted against non-
fiduciaries (which conflicts with the Trustee's assertion that
Naples and all MDC defendants are insiders and fiduciaries), (2)
the Trustee failed to allege knowing participation and damages,
and (3) the statute of limitations precludes a cause of action
for activities occurring prior to March 25, 2002.  <u>See, e.g.</u>, <u>In
re General Motors (Hughes) S'holder Litig.</u>, No. Civ. A. 20269,
2005 WL 1089021, at *23 (Del. Ch. May 4, 2005) (unpublished

---

[4]  Section 108(a) provides:

(a) If applicable nonbankruptcy law, an order entered
in a nonbankruptcy proceeding, or an agreement fixes a
period within which the debtor may commence an action,
and such period has not expired before the date of the
filing of the petition, the trustee may commence such
action only before the later of—
      (1) the end of such period, including any
      suspension of such period occurring on or after
      the commencement of the case; or
      (2) two years after the order for relief.

11 U.S.C. § 108(a).

14

opinion) (providing that an aiding and abetting breach of
fiduciary duty claim requires:  "(1) the existence of a fiduciary
relationship, (2) the fiduciary breached its duty, (3) a
defendant, who is not a fiduciary, knowingly participated in a
breach, and (4) damages to the plaintiff resulted from the
concerted action of the fiduciary and the non-fiduciary."); 10
Del. Code Ann. § 8106 (2006) (providing for three-year statute of
limitations for actions arising out of fiduciary relations);
Fruehauf Trailer, 250 B.R. at 184 (noting that a claim for aiding
and abetting a breach of fiduciary duty under Delaware law
carries a three-year statute of limitations).

The Court finds these arguments unpersuasive.  Although the
elements of a claim for aiding and abetting a breach of fiduciary
duty count are couched in terms of the primary violator being a
fiduciary and the aider and abettor a non-fiduciary, there is no
case law that precludes such a claim against a fiduciary.  While
a corporate director owes the corporation fiduciary duties, in
some instances those duties may be limited (by corporate charter
or statute).  Thus, the Court may find that a director had no
fiduciary duty but aided and abetted a party that did.

The Complaint incorporates by reference the previous
paragraphs and alleges:

> 73.  If and to the extent that any Defendant is found
> not to have had a fiduciary duty to TBS at the time of
> the transactions complained herein, each such Defendant
> is nevertheless liable for having aided and abetted the

            breach of fiduciary duty by one or more of the other
            Defendants possessing such duties at the relevant
            times.
            74.  Each non fiduciary Defendant substantially and
            knowingly participated in, benefitted from and aided
            and abetted the breach of fiduciary duty engaged in by
            the officers, directors and controlling shareholders of
            TBS.

(Complaint at ¶¶ 73-74.)

        Accordingly, the Court concludes that the Trustee has stated

a claim against the MDC Defendants and Naples for aiding and

abetting a breach of fiduciary duty.  Because the Complaint

relies on events that occurred within three years of the petition

date, the Court will not dismiss it.  Fruehauf Trailer, 250 B.R.

at 184.

            4.   Voidable Transfers

                a.   Actual Fraudulent Transfers

        The MDC Defendants and Naples argue that to the extent the

Trustee is pleading a claim of actual fraudulent transfer under

the Bankruptcy Code and state law, the claim should be dismissed

for failure to state actual fraud with particularity.  See, e.g.,

Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with

particularity."); Circle Y, 354 B.R. at 356 ("To plead fraud, the

Trustee cannot merely recite the statutory elements.").

        In the fraudulent transfer count the Trustee incorporates

the previous allegations by reference and further alleges:

                                 16

76.   The Defendants orchestrated, participated in
and/or aided and abetted the granting of security
interests in property of the Debtors, and the transfer
of money and other property directly or indirectly to
or for the benefit of MDC . . . and did so with the
actual intent to hinder, delay and/or defraud TBS's
creditors.
77.   To the extent that any Defendant received fees or
other sums on account of services allegedly provided,
including management fees, legal fees or other sums
during the wrongful perpetuation of the Debtors'
existence and/or while the breaches of fiduciary duty
and other wrongs were being perpetuated by said
Defendants, the monies received on account of such
services constituted fraudulent and/or voidable
transfers for which the Trustee is entitled to recover.
                    . . . .
83.   The transfers to MDC after January 1, 2003 for ASA
fees and/or fees in connection with the April 2003
Transaction were made with actual intent to hinder or
delay creditors. . . .

(Complaint at ¶¶ 76-77, 83.)

        Although the Trustee is afforded liberality in pleading

fraud, the Court concludes that the allegations of actual fraud

within the fraudulent transfer count are insufficient and lack

the requisite particularity required by Rule 9(b).  For example,

the Trustee does not specify what individual Defendant received

which particular transfer.  Further, in pleading actual fraud,

the Trustee does little beyond merely reciting the elements of

fraud.  Accordingly, the Court concludes that the Trustee has

failed to state a claim for actual fraudulent transfer.  However,

the Court will allow the Trustee leave to amend the count to

state fraud with sufficient particularity.  Fed. R. Civ. P. 15

(a) ("[A] party may amend the party's pleading . . . by leave of

court . . . and leave shall be freely given when justice so requires.").

b.    <u>Constructively Fraudulent Transfers</u>

The MDC Defendants and Naples argue that the Court should dismiss the constructively fraudulent transfer claim because the Trustee failed to identify which transfers were constructively fraudulent, the transferee of the transfers, and the value given for each transfer.  <u>Global Link Telecom</u>, 327 B.R. at 718 (dismissing constructive fraud count because the allegations in the complaint provided "no information on the Debtors' financial status or the value of what was received in exchange" for each transfer).

The Complaint alleges:

79.  The Debtors failed to receive reasonably equivalent value in exchange for the transfers to MDC . . . at a time when (i) [the Debtors were] insolvent, (ii) [the Debtors were] engaged in business for which [their] remaining property constituted unreasonably small capital for its needs, and/or (iii) the Defendants knew or should have known that [the Debtors] would incur additional debts that would be beyond [the Debtors'] ability to pay as such debts matured.
                              . . . .
83.  The transfers to MDC after January 1, 2003 for ASA fees and/or fees in connection with the April 2003 Transaction . . . were made . . . when [the Debtors] believed [they] would incur debts that would be beyond [their] ability to pay as they matured.

(Complaint at ¶¶ 79, 83.)  The Trustee does not allege which transfers are avoidable or the date of the transfers.  Also, the Trustee did not allege the purported value received in exchange

18

for the transfers.  Further, the Trustee does not allege whether
Naples, an employee and not a director of MDC, received any
transfers.  Accordingly, the Court concludes that the Trustee has
failed to state a claim for constructively fraudulent transfers
against the MDC Defendants and Naples.  The Court will allow the
Trustee to amend the count to add the required details.  Fed. R.
Civ. P. 15(a).

         c.   <u>Aiding and Abetting Fraudulent Transfers</u>

The MDC Defendants and Naples argue that the Trustee has
failed to state a claim against them for aiding and abetting
fraudulent transfers because Delaware does not recognize the
cause of action.  <u>See, e.g.</u>, <u>Trenwick Am. Litig. Trust v. Ernst &
Young, L.L.P.</u>, 906 A.2d 168, 203 (Del. Ch. 2006) (stating, but
not holding, that "[d]espite the breadth of remedies available
under state and federal fraudulent conveyance statutes, those
laws have not been interpreted as creating a cause of action for
'aiding and abetting'.").  <u>See also</u> <u>Nationwide Mut. Ins. Co. v.
Buffetta</u>, 230 F.3d 634, 637 (3d Cir. 2000) ("The opinions of
intermediate appellate state courts are 'not to be disregarded by
a federal court unless it is convinced by other persuasive data
that the highest court of the state would decide otherwise'.")

The Trustee responds that the Supreme Court of Delaware has
not decided the issue of whether a cause of action for aiding and
abetting a fraudulent conveyance exists, but there is a sound

19

basis for believing that the Court would so hold.  See, e.g.,
Nationwide, 230 F.3d at 637 (explaining that if a state's highest
court has not decided an issue, a federal court must predict how
the state court would decide).  See also Gotham Partners, L.P. v.
Hallwood Realty Partners, L.P., 817 A.2d 160, 172 (Del. 2002)
(recognizing a cause of action for aiding and abetting a breach
of fiduciary duty that was created by agreement); Zerby v. Allied
Signal, Inc., No. 00C-07-068-FSS, 2001 WL 112052, at *4, 8-9
(Del. Super. Feb. 2, 2001) (unpublished opinion) (failing to
dismiss a count alleging aiding and abetting of fraudulent
misrepresentation, suppression, and concealment of material
information).  Furthermore, the Trustee asserts that it is not
clear whether Delaware law will even apply to the fraudulent
transfer count.

Although the Trenwick decision is well-reasoned, the Court
is not prepared at this stage to dismiss this count based on that
decision.  It is likely this litigation will be protracted and
further elucidation on this issue by the Delaware Supreme Court
may be forthcoming in the interim.  Accordingly, the Court will
not dismiss the aiding and abetting fraudulent transfers count.

d.   Preferences

The MDC Defendants and Naples argue that the Court should
dismiss the preferential transfer claims against them because the
Trustee has failed to plead a specific transfer within ninety

20

days (non-insider) or between 90 days and one year before the date of the filing of the bankruptcy petition (insider), identity of the transferor/transferee, and other required elements of the cause of action, including facts sufficient to make the MDC Defendants and Naples insiders.  See, e.g., 11 U.S.C. § 547(b); In re DVI, Inc., 326 B.R. 301, 311 (Bankr. D. Del. 2005) (finding a complaint "adequately [pled] a preference claim by clearly identifying the nature and amount of each antecedent debt and by identifying each improper transfer by date, name of debtor/transferor, name of transferee and the amount of the transfer.").

Section 547(b) provides that a transfer is preferential if it was made

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>    (A) on or within 90 days before the date of the filing of the petition; or
>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>    (A) the case were a case under chapter 7 of this title;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In the Complaint, the Trustee alleges:

81.  The transfers of the security interests and any
property pursuant thereto to MDC were transfers of
interests of the Debtors in property (i) to or for the
benefit of a creditor, (ii) for or on account of an
antecedent debt owed by the Debtors before the
transfers were made, (iii) made while the Debtors were
insolvent, (iv) made between ninety days and one year
before the date of the filing of the bankruptcy
petition to MDC who was an insider as defined in 11
U.S.C. §101(31) at the time of such transfers, and (v)
that enables MDC as a creditor to receive more than MDC
would receive if the case were a case under chapter 7
of the Bankruptcy Code, the transfer had not been made
and MDC received payment of such debt to the extent
provided by the provisions of the Bankruptcy Code.
Accordingly, the transfers of the security interests
and any property subject thereto to or for the benefit
of MDC are avoidable under 11 U.S.C. §547(b) together
with applicable state law and are subject to recovery
in accordance with 11 U.S.C. §550.

(Complaint at ¶ 81.)  Further, it is alleged that the Debtors
owed MDC over $12.5 million (unsecured antecedent debt) in April
2003 and that, as part of the July 2004 Restructuring
transaction, MDC was granted a second lien in substantially all
the Debtors' property.  (Id. at ¶ 53.)  As discussed above in
Part III.B.2, the Trustee sufficiently alleges that the MDC
entities were controlling shareholders of the Debtors and thus
insiders.  11 U.S.C. § 101(31)(B) & (41).  Moreover, the
individual corporate directors are also insiders.  11 U.S.C. §
101(31)(I).  The July 2004 Transaction was within one year of the
March 2005 petition date.  Finally, the Trustee alleges that the
transfer enabled MDC to receive more than it would under chapter
7.

The Court finds the allegations in the Complaint sufficient to state a claim against the MDC entities, but not against McCown, Hellman, or Naples because there is no allegation of a preferential transfer to them.  Accordingly, the Court concludes that the preferential transfer claim against the MDC entities is sufficient to withstand the Rule 12(b)(6) motion.  The Court will, however, dismiss the count as to the individual Defendants (McCown, Hellman, and Naples).

e.    Section 550 Recovery

The MDC Defendants argue that the Court must dismiss the Trustee's count against MDC pursuant to section 550 for recovery of the $18 million payment to TIAA because the Trustee does not plead (i) a voidable transfer; (ii) receipt of proceeds by an MDC Defendant; and (iii) the amount of funds received.  The MDC Defendants further argue that to the extent the Trustee seeks recovery of funds relative to the subordinate lien granted to MDC, the Trustee has failed to allege any dilution of the estate.

The Trustee responds that to the extent the security interest granted to and payments made to TIAA were made for the benefit of MDC they are recoverable under sections 550(a) and 544(b) of the Bankruptcy Code and Delaware state law.  11 U.S.C. §§ 550(a), 544(b); 6 Del. Code Ann. § 1308(b).

Section 550 of the Bankruptcy Code provides:

> (a) Except as otherwise provided in this
> section, to the extent that a transfer is

23

avoided under section 544, 545, 547, 548,
549, 553 (b), or 724 (a) of this title, the
trustee may recover, for the benefit of the
estate, the property transferred, or, if the
court so orders, the value of such property,
from—
>       (1) the initial transferee of such
>       transfer or the entity for whose
>       benefit such transfer was made; or
>       (2) any immediate or mediate
>       transferee of such initial
>       transferee.

11 U.S.C. § 550(a) (emphasis added).  Delaware law similarly

provides for recovery in the following instance:

(b) Except as otherwise provided in this section, to
the extent a transfer is voidable in an action by a
creditor under § 1307(a)(1) of this title, the creditor
may recover judgment for the value of the asset
transferred, as adjusted under subsection (c) of this
section, or the amount necessary to satisfy the
creditor's claim, whichever is less. The judgment may
be entered against:
>       (1) The 1st transferee of the asset or the
>       person for whose benefit the transfer was
>       made; or
>       (2) Any subsequent transferee other than a
>       good-faith transferee or obligee who took for
>       value or from any subsequent transferee or
>       obligee.

6 Del. Code Ann. 1308(b) (emphasis added).

In the Complaint the Trustee asserts:

85.  By receiving the right to participate in payments
made to TIAA, MDC received the benefit of the transfers
of property and the security interest to TIAA.
Pursuant to 11 U.S.C. § 550(a)(1) and applicable state
law, MDC is an entity whose benefit the transfer of the
security interest and the payment of more than $18
million to TIAA was made.  MDC is therefore liable for
the full amount of the transfers to TIAA.

(Complaint at ¶ 85.)

24

In the Final Cash Collateral Order the Trustee acknowledged
that the TIAA lien and payments on the TIAA debt were not
avoidable.  <u>Parilla v. IAP Worldwide Servs., VI, Inc.</u>, 368 F.3d
269, 275 (3d Cir. 2004) (explaining that facts conceded in
pleadings are binding judicial admissions).  Pursuant to the
Final Cash Collateral Order, the Trustee had ninety days from the
petition date to file any claim challenging the TIAA security
interests, liens and pre-petition debt, including such claims
arising under sections 506, 544, 547, 544 and 552 and the
doctrines of equitable subordination and deepening insolvency.
(Final Cash Collateral Order at ¶ 32.)

The Trustee did not do so.  The Trustee's failure to timely
file such a claim against TIAA resulted in a waiver of his right
to do so.  Further, the Trustee requested (and the Court
approved) the authority to pay a portion of certain asset sale
proceeds to TIAA in partial satisfaction of its pre- and post-
petition secured claims.  (See June 30, 2005 Sale Motion at ¶¶
84-86.; August 12, 2005 Sale Order at ¶¶ 11, 15.)

Because the Trustee cannot avoid the transfer to the initial
transferee, TIAA, the Trustee cannot recover against the mediate
transferee, MDC.  See, e.g., <u>In re VF Brands, Inc.</u>, 282 B.R. 134,
139 (Bankr. D. Del. 2002) ("Under section 550 of the Bankruptcy
Code, in order to recover against a mediate or intermediate
transferee, the claimant must establish that the transfer is a

voidable fraudulent conveyance vis-á-vis the initial
transferee."). Consequently, the Court will dismiss this claim
against MDC.[5]

   f.   Statute of Limitations

     The MDC Defendants and Naples object to the entire
fraudulent transfer count on statute of limitations grounds. The
Trustee has not specified the dates for many of the alleged
transfers. The Court will allow the Trustee to amend the
Complaint to allege specific transfer dates, but to the extent
that the transfer dates are outside the applicable statute of
limitations period, they will be subject to dismissal under Rule
12(b)(6). 11 U.S.C. § 548 (pre-BAPCPA provision providing for
avoidance of transfers within one year of filing of petition); 11
U.S.C. 544 (allowing avoidance under state law); 6 Del. Code §
1309 (limiting the avoidance period to four years after transfer
was made or within one year after the transfer could have
reasonably been discovered).

   5.   Corporate Waste

     The MDC Defendants and Naples argue for dismissal of the
corporate waste count on the grounds that the claim fails as a
matter of law and the statute of limitations precludes the claim

---

     [5]  The Court will not address the MDC Defendants' argument
that the subordinate lien caused no dilution of the estate
because the Trustee's claim is based on MDC's participatory
interests in funds received in relation to TIAA's first lien.
(Complaint at ¶ 85.)

to the extent it relies on activity pre-dating March 25, 2002.

Brehm v. Eisner, 746 A.2d 244, 263-64 (Del. 2000) (finding of

corporate waste in risky business transactions is "confined to

unconscionable cases where directors irrationally squander or

give away corporate assets."); 10 Del. Code Ann. § 8106

(providing three-year statute of limitations).

Although the Trustee does not respond to this argument, the

Court cannot conclude that the corporate waste count should be

dismissed.  The Complaint incorporates the preceding paragraphs

by reference and alleges:

> 88.  The payment of fees to MDC in connection with the
> April 2003 Transaction or otherwise, the payment of
> fees to [Winstead,] the granting of security interests
> in which MDC participated had no rational business
> purpose and were so one-sided that no business person
> of ordinary sound judgment could believe that [the
> Debtors] received adequate consideration in exchange
> for the payments and/or transfers.

(Complaint at ¶ 88.)

A claim for corporate waste under Delaware law is subject to

the following standard:

> The judicial standard for determination of corporate
> waste is well developed. Roughly, a waste entails an
> exchange of corporate assets for consideration so
> disproportionately small as to lie beyond the range at
> which any reasonable person might be willing to trade.
> Most often the claim is associated with a transfer of
> corporate assets that serves no corporate purpose; or
> for which no consideration at all is received. Such a
> transfer is in effect a gift. If, however, there is any
> substantial consideration received by the corporation,
> and if there is a good faith judgment that in the
> circumstances the transaction is worthwhile, there
> should be no finding of waste, even if the fact finder

27

would conclude <u>ex post</u> that the transaction was
unreasonably risky.

<u>Brehm v. Eisner</u>, 746 A.2d 244, 263 (Del. 2000) (emphasis in
original).  Therefore, before the Court may find corporate waste,
it must determine whether adequate consideration was received and
whether good faith existed.  Such a factual inquiry is
inappropriate at the motion to dismiss stage.  Further, it
appears that the Trustee's corporate waste count is based on the
April 2003 transaction and activities beyond.  Therefore, the
claim falls within the three-year statute of limitations period.

Accordingly, after review of the facts alleged in the
Complaint and the standard for corporate waste, the Court
concludes that the Trustee has alleged enough facts to place the
MDC Defendants and Naples on sufficient notice so that they may
prepare a defense.  Accordingly, the Court will not dismiss the
corporate waste count.

6.  <u>Deepening Insolvency</u>

The MDC Defendants and Naples argue that the Court must
dismiss the deepening insolvency count because (i) there is no
cause of action for deepening insolvency in Delaware, (ii) if
there is, all the elements of the cause of action are not pled,
(iii) the business judgment rule protects the board of directors'
decision concerning debt incurrence; (iv) the count is based on
fraud and was not pled with particularity; and (v) the statute of
limitations has run.

28

The Trustee responds by contending, among other things, that Delaware law may not even apply to the count because the Debtors operated in more than ten states and Puerto Rico and the agreements governing the July 2004 Restructuring are governed by New York law.  Cf. Royal Indemnity Co. v. Pepper Hamilton LLP, Civ. A. No. 05-165-JJF, 2007 WL 881415, at *9 (D. Del. Mar. 22, 2007) (holding, with little analysis, that a Rule 12(b)(6) dismissal was not warranted for allegations of deepening insolvency under Delaware, Pennsylvania, and North Carolina law after "[c]onsidering the uncertainty of the law in this area and drawing all reasonable factual inferences in the light most favorable to the Plaintiff, [ultimately concluding] that Plaintiff . . . pled sufficient facts to state a claim for deepening insolvency.").

The MDC Defendants and Naples contend that Delaware law applies.  MDC was a controlling shareholder of the Parent Debtor, which is a Delaware corporation.  The decisions a company makes, through officer and board action, to incur debt for use in operations and to restructure such debt, are business decisions governing internal affairs that necessarily affect shareholder value.  Accordingly, the law of the state of incorporation applies to the deepening insolvency count.  See, e.g., McDermott Inc. v. Lewis, 531 A.2d 206, 215 (Del. 1987) (noting that the internal affairs "doctrine governs the choice of law

determinations involving matters <u>peculiar</u> to corporations, that
is, those activities concerning the relationships <u>inter</u>
<u>settlement</u> of the corporation, its directors, officers and
shareholders. . . . [It] requires that the law of the state of
incorporation should determine issues relating to internal
corporate affairs.").

The MDC Defendants and Naples further contend that Delaware
law does not recognize a deepening insolvency cause of action.
<u>See, e.g.</u>, <u>Trenwick</u>, 906 A.2d at 174, 204-07 (concluding that the
cause of action "deepening insolvency" does not exist under
Delaware law but that "[e]xisting equitable causes of action for
breach of fiduciary duty, and existing legal causes of action for
fraud, fraudulent conveyance, and breach of contract are the
appropriate means by which to challenge the actions of boards of
insolvent corporations.").  <u>See also</u> <u>In re Radnor Holdings Corp.</u>,
353 B.R. 820, 842 (Bankr. D. Del. 2006) (relying on <u>Trenwick</u> in
noting that Delaware law does not recognize a claim for deepening
insolvency).

Although the <u>Trenwick</u> decision is well-reasoned, the Court
is not prepared at this stage to dismiss this count based on that
decision.  <u>Cf.</u> <u>N. Am. Catholic Educ. Programming Found., Inc. v.
Gheewalla</u>, No. 521, 2006, 2007 WL 1453705 (Del. May 18, 2007)
(holding that creditors of corporation in zone of insolvency do
not have direct, as opposed to derivative, claims for breach of

fiduciary duty against corporation's directors).  As noted above,
it is likely that this litigation will be protracted and further
elucidation on this issue by the Delaware Supreme Court may be
forthcoming in the interim.  Accordingly, the Court will not
dismiss the deepening insolvency count.

      7.  <u>Civil Conspiracy</u>

    The MDC Defendants and Naples argue that the civil
conspiracy and aiding and abetting civil conspiracy counts
against them fail because civil conspiracy is not an independent
cause of action in Delaware, all the elements of a civil
conspiracy count are not alleged, and the statute of limitations
bars the cause of action as it pertains to activities occurring
before March 25, 2002.  <u>See, e.g.</u>, <u>In re Crown-Simplimatic, Inc.</u>,
299 B.R. 319, 327 (Bankr. D. Del. 2003) ("Under Delaware law,
civil conspiracy cannot be sustained as an independent tort, but
rather the allegations must relate to the completion of a tort
independent of the conspiracy itself." (internal quotations and
citation omitted)); <u>Nicolet, Inc. v. Nutt</u>, 525 A.2d 146, 149-
50 (Del. 1987) (stating that the elements of civil conspiracy
are: "(1) [a] confederation or combination of two or more
persons; (2) an unlawful act done in furtherance of the
conspiracy; and (3) [a]ctual damage."); <u>Amaysing Techs. Corp. v.
Cyberair Commc'n, Inc.</u>, No. Civ. A. 19890-NC, 2005 WL 578972, at
*7 (Del. Ch. Mar. 3, 2005) (holding that, except when officers

and agents act pursuant to personal motives, "a corporation
generally cannot be deemed to have conspired with its officers
and agents for purposes of establishing jurisdiction under the
conspiracy theory"); 10 Del. Code Ann. § 8106 (providing three-
year statute of limitations); <u>Glassberg v. Boyd</u>, 116 A.2d 711,
717-18 (Del. Ch. 1955) (applying section 8106 three-year statute
of limitations period to a civil conspiracy count).

The Trustee responds that he has alleged all required
elements, including underlying independent wrongs and a
conspiracy amongst separate entities (i.e., the MDC entities, the
three directors, TIAA, and Winstead).  The conspiracy count of
the Complaint incorporates the previous paragraphs and
additionally alleges:

> 95.  Each of the Defendant MDC entities conspired with
> [the Directors McCown, Hellman, and Naples] and
> [Winstead] and each other, in an effort to perpetrate,
> facilitate, and aid and abet the breaches of fiduciary
> duty and other wrongs alleged herein.
> 96.  The Defendants undertook substantial overt acts,
> as aforesaid, in furtherance of the conspiracies
> alleged herein and are liable for the damages and harm
> to TBS.

(Complaint at ¶¶ 95-96.)

As discussed above, the Trustee has alleged underlying
independent wrongs against the MDC Defendants, including breach
of fiduciary duty.  However, the MDC Defendants could not
conspire with each other.  <u>Amaysing Techs.</u>, 2005 WL 578972, at *7
(a corporation cannot conspire with itself or its officers,

directors, or employees).  Further, Naples was an employee of MDC

who the Trustee alleges acted as an agent for the entity;

therefore, the MDC Defendants could not conspire with Naples.

(Complaint at ¶¶ 23, 66.)  They likewise could not conspire with

TIAA because the Trustee has not (and cannot) assert any

wrongdoing by TIAA.[6]  The Trustee, however, does allege that

Winstead aided and abetted the MDC Defendants in the July 2004

Restructuring, which resulted in the granting of first and second

liens in substantially all the Debtors' property to TIAA and MDC.

(Complaint at ¶ 53.)  The Trustee further alleges that Winstead

influenced the Debtors to act in the best interest of McCown and

MDC and to prolong the existence of the Debtors so that Winstead

could collect substantial legal fees.  (Id. at ¶ 57.)

Additionally, the Trustee asserts: "[Winstead] aided, abetted,

and substantially assisted MDC in effectuating the July 2004

Restructuring, knowing full well of the Defendants' unlawful

objective to prefer MDC over non-insider creditors . . . and . .

. to hinder, delay and defraud litigants into settling cheaply or

abandoning their meritorious claims."

---

[6]  In footnote 2 in the Complaint the Trustee states: "No
claims or wrongdoing are asserted herein against TIAA.  The
Trustee previously provided a release to TIAA pursuant to a
Bankruptcy Court approved agreement whereby TIAA permitted the
use of cash collateral by the estates of the Debtors."
(Complaint at ¶ 53, footnote 2.)

The Court concludes, however, that the Complaint fails to identify what unlawful acts were done in furthering any conspiracy between the MDC Defendants and Winstead. The allegations that Winstead "influenced," "aided and abetted," and "substantially assisted," the wrongs of the MDC Defendants is not enough to state a claim for conspiracy. Accordingly, the Court concludes that the Trustee has failed to state a claim for civil conspiracy and aiding and abetting civil conspiracy against the MDC Defendants, Naples, and Winstead. However, the Court will allow the Trustee to amend his Complaint to state civil conspiracy with sufficient specificity. Fed. R. Civ. P. 15(a) (providing that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.").

8. <u>Declaratory Relief</u>

The MDC Defendants and Naples argue that the Trustee fails to state a claim against them for equitable subordination and other declaratory relief because the Trustee has stated no wrongs committed by them. 11 U.S.C. § 510(c); <u>In re SubMicron Sys. Corp.</u>, 432 F.3d 448, 462 (3d Cir. 2006) (stating that the Third Circuit has never adopted an inequitable conduct requirement, but noting that courts generally require three elements for equitable subordination: (1) inequitable conduct on the part of the claimant, (2) a resulting injury to other creditors or an unfair

34

advantage to the claimant, and (3) consistency of equitable
subordination with the Bankruptcy Code).

The Court cannot agree with the MDC Defendants and Naples.
As discussed above, the Trustee has sufficiently stated claims of
wrongdoing against the MDC Defendants and Naples.  The claims
allegedly resulted in injury to the Debtors and to other
creditors or conferred an unfair advantage on the MDC Defendants
and Naples.  Accordingly, the Court will not dismiss this count
against the MDC Defendants and Naples.

9.   <u>Punitive Damages</u>

The Trustee seeks punitive damages on the basis that the
Defendants' conduct "was intentional, engaged in for an improper
purpose and with a bad motive, and was sufficiently outrageous to
justify the imposition of punitive damages."  (Complaint at ¶
68.)  The MDC Defendants and Naples argue that none of the
alleged conduct rises to the level of wanton or willful disregard
for the rights of the Debtors.  <u>See, e.g.</u>, <u>Cloroben Chem. Corp.
v. Comegys</u> 464 A.2d 887, 891 (Del. 1983) ("Punitive damages are
recoverable where the defendant's conduct exhibits a wanton or
wilful disregard for the rights of plaintiff.").

To determine whether conduct rises to a level that warrants
the award of punitive damages requires a factual inquiry that is
not appropriate at the motion to dismiss stage.  <u>See, e.g.</u>, <u>In re
Am. Bus. Fin. Servs., Inc.</u>, No. A-06-50826 (MFW), 2007 WL 465571,

35

at *10 (Bankr. D. Del. Feb. 13, 2007).  Consequently, the Court
will not dismiss the punitive damages claim against the MDC
Defendants and Naples.

     C.  <u>Winstead's Motion to Dismiss</u>

<u>     </u>The Trustee alleges that at the urging of McCown and MDC the
Debtors employed Winstead beginning in May 2003.  (Complaint at ¶
56.)  Before the Winstead law firm was employed by the Debtors,
Winstead had represented the Defendants McCown and/or MDC in
unrelated matters.  (<u>Id.</u> at ¶55.)  Further, the Trustee asserts
that Winstead's named principal, William Sechrest, was a close
friend of McCown. (<u>Id.</u>)

     The only alleged transaction in the Complaint with which
Winstead was involved is the July 2004 Restructuring in which
TIAA and MDC were granted first and second liens on the Debtors'
property.  (<u>Id.</u> at ¶ 53.)  The Trustee asserts that Winstead
aided and abetted MDC in the July 2004 Restructuring which
resulted in preferential and fraudulent transfers to MDC.  (<u>Id.</u>
at ¶ 60.)  The Trustee further alleges that Winstead, as a
result of its close relationship with McCown and MDC, influenced
the Debtor to act in the best interest of McCown and MDC by
prolonging the existence of the Debtors, which were insolvent or
in the zone of insolvency.  (<u>Id.</u> at ¶¶ 57, 59.)  Moreover, it is
asserted that Winstead also prolonged the Debtors' business so

36

that Winstead could collect over $700,000 in fees.  (Id. at ¶¶ 57-58.)

### 1.  Breach of Fiduciary Duty

Winstead argues that the breach of fiduciary duty count against it fails because the Trustee has not alleged any facts to support a finding that Winstead had a fiduciary duty or actions which constituted a breach of that duty.

The Trustee responds that Winstead was an insider of the Debtors.  See, e.g., 11 U.S.C. § 101(31)(B) (providing that a person (entity) in control of a corporation is an insider); In re Oakwood Homes Corp., 340 B.R. 510, 523 (Bankr. D. Del. 2006) (noting that "courts have applied insider status flexibly to include a broad range of parties who have a close relationship with the debtor." (internal quotations and citation omitted)); In re Beaver Valley Builder's Supply, Inc., 177 B.R. 507, 513 (Bankr. W.D. Pa. 1995) (stating that the insider list in section 101(31) is not exhaustive).  Further, an attorney stands in a fiduciary relationship with his client.  Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988).

Additionally, the Trustee contends that Winstead participated in a scheme with the other Defendants to hinder creditors from recovering against the Debtors' assets or to cause them to abandon their meritorious claims by granting a first lien to TIAA, a second lien to MDC, and participation rights to MDC.

37

(Complaint at ¶¶ 51-59.)  The Trustee supports his allegations by citing to a memorandum from William Sechrest, a named principal of Winstead, that was addressed to McCown, Hellman, and Naples. (Amended Complaint, Exhibit A, October 8, 2004, Memorandum from Winstead to The Brown Schools, Inc.)  In the Memorandum, William Sechrest wrote:

> This memorandum concerns The Brown Schools, Inc.
> ("TBS") and preserving the value of TBS.  It assumes
> TIAA is well secured and that there is exposure in
> MDC's PIK Notes.  It assumes a current value of $30-
> 35,000,000 for TBS which makes the MDC PIK Notes worth
> from $10-15 million.
>
> TBS has always believed that once TIAA and MDC were
> secured creditors there would be opportunities to
> settle the material litigation growing out of the six
> RTCs sold to PSI and the 6 or 7 lawsuits pending in
> Florida.  TBS does, in fact, now have the opportunity
> to settle most of this litigation for a relatively
> small amount relative to the assessment by TBS'
> counsel of TBS' monetary exposure in these cases.  The problem
> is TBS' cash constraints make funding settlements
> impossible and a continued defense of these claims
> unaffordable.  What needs to happen is a cash infusion
> to allow the settlement of existing cases and to allow
> appropriate defensive actions (e.g., insolvency
> proceedings) in cases where only TBS subsidiaries are
> exposed. . . .

(Id.)  The Trustee asserts that the Memorandum demonstrates Winstead's knowledge of the Debtors' insolvency and the effect of granting liens to TIAA and MDC.

There is a dispute as to whether Winstead was operating in the Debtors' or its own best interests when it assisted in the transaction whereby TIAA and MDC were granted liens in the Debtors' assets and collected fees from the Debtors.  The Court

38

concludes, however, that the Trustee has alleged sufficient facts to state a claim for breach of fiduciary duty against Winstead and should be allowed to prove this claim.  See, e.g., Gibson v. Ellis, 126 S.W.3d 324, 330 (Tex. App. 2004) ("An attorney breaches his fiduciary duty when he benefits improperly from the attorney-client relationship by, among other things, subordinating his client's interest to his own, retaining the client's funds, engaging in self-dealing, improperly using client confidences, failing to disclose conflicts of interest, or making misrepresentations to achieve these ends.").  Consequently, the Court will not dismiss the breach of fiduciary duty count against Winstead.

### 2.   Aiding and Abetting Breach of Fiduciary Duty

Winstead argues that the Trustee fails to state the required elements of its claim for aiding and abetting a breach of fiduciary duty.  See, e.g., General Motors (Hughes) S'holder Litig., 2005 WL 1089021, at *23 (stating that the four elements of aiding and abetting a breach of fiduciary duty claim are (1) existence of a fiduciary relationship, (2) breach of fiduciary duty, (3) knowing participation by the non-fiduciary, and (4) "damages to the plaintiff result[ing] from the concerted action of the fiduciary and the non-fiduciary.").

As discussed above, the Trustee has stated a claim for breach of fiduciary duty against the other Defendants, including

39

MDC.  The Trustee alleges that Winstead aided and abetted MDC in
its breach of fiduciary duties by assisting in the July 2004
Restructuring which resulted in the granting of first and second
liens to TIAA and MDC.  (Complaint at ¶ 53.)  However, it is not
clear from the Complaint what specific actions Winstead took to
aid and abet MDC.  Therefore, the Court concludes that the
Trustee's factual allegations are insufficient to withstand a
motion to dismiss.  Consequently, the Court will dismiss the
aiding and abetting a breach of fiduciary duty count against
Winstead but will allow the Trustee to amend to add more factual
detail to the allegations.  Fed. R. Civ. P. 15(a).

3.  Fraudulent and/or Voidable Transfers

Winstead argues that the Trustee has failed to state a claim
for fraudulent transfer against it because there is no allegation
that Winstead was a transferee or transferor in the July 2004
Restructuring.  11 U.S.C. §§ 548, 544, 550.

In the Complaint, the Trustee alleges:

76.  The Defendants orchestrated, participated in
and/or aided and abetted the granting of security
interests in property of the Debtors, and the transfer
of money and other property directly or indirectly to
or for the benefit of MDC and [Winstead] and did so
with the actual intent to hinder, delay and/or defraud
TBS's creditors.
77.  To the extent that any Defendant received fees or
other sums on account of services allegedly provided,
including management fees, legal fees or other sums
during the wrongful perpetuation of the Debtors'
existence and/or while the breaches of fiduciary duty
and other wrongs were being perpetuated by said
Defendants, the monies received on account of such

services constituted fraudulent and/or voidable
transfers for which the Trustee is entitled to recover.
                    . . . .
79.  The Debtors failed to receive reasonably
equivalent value in exchange for the transfers to
[Winstead] at a time when (i) [the Debtors were]
insolvent, (ii) [the Debtors were] engaged in business
for which [their] remaining property constituted
unreasonably small capital for its needs, and/or (iii)
the Defendants knew or should have known that [the
Debtors] would incur additional debts that would be
beyond [the Debtors'] ability to pay as such debts
matured.

(Complaint at ¶¶ 76-77, 79.)

Although the Trustee alleges that Winstead was the

transferee of $700,000 in legal fees, he does not allege enough

facts from which the Court may conclude that the payment was for

less than reasonably equivalent value or was to hinder, delay, or

defraud the Debtors' creditors.  11 U.S.C. § 548.  Accordingly,

the Court concludes that the Trustee has failed to state a claim

against Winstead for fraudulent transfer, but will allow the

Trustee to amend the count to add more detail.  Fed. R. Civ. P.

15(a).

        4.  <u>Deepening Insolvency</u>

Winstead contends that the deepening insolvency count

against it must be dismissed because Delaware law does not

recognize the cause of action.  <u>See, e.g.</u>, <u>Trenwick</u>, 906 A.2d at

204-07 (concluding that Delaware law does not recognize the claim

of deepening insolvency); <u>Nationwide</u>, 230 F.3d at 637 (explaining

that absent a controlling decision from a state's highest court,

41

a federal court must predict how the state's highest court would decide an issue).

Although the <u>Trenwick</u> decision is well-reasoned, the Court is not prepared at this stage to dismiss this count based on that decision. <u>Cf.</u> <u>N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla</u>, No. 521, 2006, 2007 WL 1453705 (Del. May 18, 2007) (holding that creditors of corporation in zone of insolvency do not have direct, as opposed to derivative, claims for breach of fiduciary duty against corporation's directors).  As noted above, it is likely that this litigation will be protracted and further elucidation on this issue by the Delaware Supreme Court may be forthcoming in the interim.  Accordingly, the Court will not dismiss the deepening insolvency count.

　　　　5.  <u>Civil Conspiracy</u>

Winstead argues that the civil conspiracy count against it fails because the Trustee fails to state an underlying wrong or allege other facts indicating the formation and operation of a conspiracy.  <u>See, e.g.</u>, <u>Crown-Simplimatic</u>, 299 B.R. at 327 (noting that civil conspiracy is not an independent cause of action under Delaware law and requires an underlying independent tort); <u>Nicolet</u>, 525 A.2d at 149-50 (providing that the elements of civil conspiracy are: "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage.")

42

The Court agrees with Winstead.  For the reasons discussed above, the Trustee has failed to provide sufficient detail of the alleged conspiracy among the Defendants.  Accordingly, the Court will dismiss this count against Winstead as well, but will allow the Trustee leave to amend to add more detail.  Fed. R. Civ. P. 15(a).

> 6. <u>Declaratory Relief</u>

Winstead seeks dismissal of the requested declaratory relief to disallow or equitably subordinate its claims because (i) it filed no proof of claim, (ii) there is no independent claim the Debtors have against it that results in recovery, and (iii) there is no alleged inequitable conduct to warrant equitable subordination.  <u>See, e.g.</u>, 11 U.S.C. § 502(d) (disallowing claim where debtor has claim against claimant for recovery of transfer that is avoidable); <u>In re Hechinger</u>, 327 B.R. 537, 551 n.22 (D. Del. 2005) (stating that most courts require a showing of inequitable conduct before ordering equitable subordination).

The Court agrees with Winstead.  Because there is no filed proof of claim against the estate to be disallowed or subordinated, this request for relief is futile.  Consequently, the Court will dismiss this count against Winstead.

43

IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that the Defendants' Motions to dismiss will be granted in part.

An appropriate Order is attached.


Dated: June 5, 2007                    BY THE COURT:

                                       Mary F. Walrath
                                       United States Bankruptcy Judge