# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 7 |
| | ) |
| THE BROWN SCHOOLS, et al., | ) Case No. 05-10841 |
| | ) |
| Debtors. | ) |
| ————————————————————— | ) |
| | ) |
| GEORGE L. MILLER, Chapter 7 Trustee, | ) Adversary No. 06-50861 (MFW) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| McCOWN DE LEEUW & CO., INC.; KIDS ACQUISITION, LLC; McCOWN DE LEEUW & CO. III, L.P.; MDC MANAGEMENT COMPANY, III, L.P.; MDC MANAGEMENT COMPANY, IIIA, L.P.; McCOWN DE LEEUW & CO. III (EUROPE), L.P.; McCOWN DE LEEUW & CO. III (ASIA), L.P.; GAMMA FUND LLC, McCOWN DE LEEUW & CO. IV, L.P.; McCOWN DE LEEUW & CO. IV ASSOCIATES, L.P.; DELTA FUND LLC; MDC MANAGEMENT COMPANY IV, LLC; McCOWN DE LEEUW & CO., LLC; GEORGE McCOWN; ROBERT HELLMAN; ROBERT J. NAPLES; and, WINSTEAD SECHREST & MINICK, P.C., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

———————————————

[1]   In this Opinion, the Court makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7052 (applying Fed. R. Civ. P. 52 (a) which provides that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 . . . .").  The facts recited are those alleged in the Complaint.

Before the Court are the motions of the MDC Defendants,[2] Winstead Sechrest & Minick, P.C. ("Winstead"), and Robert J. Naples ("Naples") for dismissal of the Second Amended Complaint filed against them by the Trustee.  For the reasons stated below, the Court will grant the motions in part.

I.   FACTS

In 1997 and 1998, Defendant McCown De Leeuw & Co., Inc. ("MDC"), through its affiliate Kids Acquisition, acquired more than 65% of the stock of The Brown Schools, Inc.[3] (the "Parent Debtor") for $63 million.  In addition, MDC, through two of its affiliates, entered into an Advisory Services Agreement (the

---

[2]  The MDC Defendants are collectively McCown De Leeuw & Co., Inc. ("MDC") and the following of its affiliates: Kids Acquisition, LLC, McCown De Leeuw & Co., III, L.P., MDC Management Company III, L.P., MDC Management Company IIIA, L.P., McCown De Leeuw & Co. III (Europe), L.P., McCown De Leeuw & Co. III (Asia), L.P., Gamma Fund LLC; McCown De Leeuw & Co. IV, L.P., McCown De Leeuw & Co. IV Associates, L.P., Delta Fund, LLC, MDC Management IV, LLC, McCown De Leeuw & Co., LLC, George McCown, and Robert Hellman.  George McCown is the founder of MDC and was a director of The Brown Schools, Inc.  Robert Hellman was the CEO of MDC and a director of The Brown Schools, Inc.

[3]  The Parent Debtor owns the following subsidiaries: The Brown Schools Management Corporation, The Brown Schools Education Corporation, CEDU Education, Inc f/k/a CEDU Family of Services, Inc. CEDU School, Inc., North American Academy, Inc., The Brown Schools of Florida, Inc., The Brown Schools of Puerto Rico, Inc., CEDU Holdings, Inc., CEDU Business Corporation, Austin TBS, Inc., The Brown Schools Business Corp., Healthcare Living Centers, Inc., Healthcare Rehabilitation Center of Austin, Inc., The Brown Schools Behavioral Health System, Inc., Travis TBS, Inc., The Brown School of San Juan, Inc., Healthcare AHGI, Inc., Elmwood Management Company, Inc., Glenwood Management Company, Inc., TBS Holdings, Inc., and TBS Administrative Corp. (collectively, the "Debtors").

"ASA") with the Debtors to provide financial, advisory, and consulting services. Pursuant to the ASA, MDC was to receive the greater of $400,000 or 0.3% of the Debtors' net revenues (capped at $800,000) as compensation for its services. As part of this recapitalization, the Debtors also obtained loans and lines of credit totaling $100 million from various banks, including Credit Suisse First Boston (collectively "CSFB"). CSFB was granted a security interest in substantially all of the Debtors' assets.

In October 1999, the Debtors obtained an additional $15 million in working capital from Teachers Insurance and Annuity Association of America ("TIAA") in exchange for notes in the principal amount of $15 million at 18% interest and warrants to purchase 40,000 shares of the Parent Debtor's stock. The TIAA notes were unsecured and subordinated to the CSFB debt.

In 2000, eight of the MDC companies loaned the Debtors $5 million in exchange for notes in the principal amount of $5 million and warrants to purchase 74,000 shares of the Parent Debtor's stock. The notes were unsecured and subordinate to the CSFB and TIAA debt. The notes were issued at an interest rate of 12% payable-in-kind (the "PIK Notes").

Later, in December 2000, upon default of the CSFB debt, the Debtors restructured that debt. The Debtors were required to sell $32 million in assets and to use the proceeds from those sales to reduce the balance of the CSFB debt. At that time, CSFB increased the interest rate on the remaining debt and the Debtors

3

were required to raise an additional $7.5 million in capital through the sale of additional PIK Notes to MDC.

By April 7, 2003, the Debtors owed approximately (i) $47 million on the CSFB debt, (ii) $18.4 million in principal and interest on the TIAA notes, (iii) $12.5 million plus interest on the PIK Notes held by MDC, and (iv) $22 million to other creditors.  Further, the Debtors were defendants in over thirty lawsuits.

During April 2003, the Debtors sold all of their residential treatment centers to third parties for a total of $64 million. The proceeds were used to satisfy the CSFB debt in full and to pay $907,000 to the Debtors' financial advisors, $578,000 to counsel, $278,000 to CSFB's legal and financial advisors, and $1.7 million to MDC.  The Trustee alleges that this "payment was merely a vehicle to unlawfully prefer MDC over the Debtors' other creditors since MDC provided no compensable services in connection with the April 2003 transactions beyond those for which it was already being paid under the [ASA]." (Second Am. Compl. ¶ 48.)

In May 2003, the Debtors hired the Winstead law firm at the direction of MDC.  In July 2004, the Debtors restructured their debt again (the "July 2004 Restructuring").  As part of the July 2004 Restructuring, TIAA received a first lien and MDC received a second lien on substantially all of the Debtors' assets.  TIAA agreed to waive all defaults on the TIAA notes which were

4

restructured into four tranches in the aggregate amount of $20.95 million.  The Debtors agreed to sell $7 million in assets to reduce the TIAA debt.  Subsequently, TIAA and MDC entered into an Intercreditor Agreement.  Under the Intercreditor Agreement, MDC was entitled to receive up to $2.9 million from the monies thereafter received by TIAA.  After granting TIAA and MDC security interests, the Debtors liquidated more than $18 million in assets and paid the proceeds to TIAA, which TIAA then shared with MDC.

On March 25, 2005, the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code.  George L. Miller was appointed trustee (the "Trustee").


II.  <u>PROCEDURAL HISTORY</u>

On September 26, 2006, the Trustee filed a Complaint against the MDC Defendants, Naples (an MDC employee and former director of the Parent Debtor), and Winstead.  On October 3, 2006, the Complaint was amended.  The Complaint contained counts against all Defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent and/or voidable transfers, deepening insolvency, civil conspiracy, and declaratory relief. There was a separate count for corporate waste against the MDC Defendants and Naples.

On November 27, 2006, the MDC Defendants and Winstead filed motions to dismiss the Complaint.  On December 1, 2006, Naples

filed a motion to dismiss and a joinder in the other motions. The Trustee opposed the motions.

On June 5, 2007, the Court issued an Opinion (the "June 2007 Opinion") which: (i) denied the MDC Defendants' and Naples' motions to dismiss on standing grounds; (ii) denied the motions to dismiss the breach of fiduciary duty and aiding and abetting claims (Counts I and II); (iii) granted the motions and dismissed without leave to replead the Trustee's fraudulent transfer claim against the MDC Defendants for recovery of the $18 million paid to TIAA; (iv) granted the motions and dismissed with leave to replead the Trustee's claims for actual and constructive fraud for recovery of the $1.7 million payment made to certain MDC Defendants for advisory fees; (v) denied the motion to dismiss the preferential transfer claim against the MDC Defendants, but granted the motion and dismissed the same count as to the individual Defendants (McCown, Hellman, and Naples); (vi) denied the motion to dismiss the corporate waste claim against the MDC Defendants and Naples; (vii) deferred ruling on the motion to dismiss the aiding and abetting fraudulent transfers and deepening insolvency claims pending a decision by the Delaware Supreme Court clarifying Delaware state law; (viii) granted the motion to dismiss the civil conspiracy and aiding and abetting civil conspiracy claims against the MDC Defendants, Naples, and Winstead, but granted the Trustee leave to amend his complaint to state civil conspiracy with sufficient specificity; (ix) denied

the motion to dismiss the claims against the MDC Defendants and
Naples for equitable subordination; and (x) denied the motion to
dismiss the punitive damage claim against the MDC Defendants and
Naples.

The Court addressed Winstead's motion to dismiss as follows:
(i) denied the motion to dismiss the breach of fiduciary duty
count; (ii) granted the motion to dismiss the aiding and abetting
a breach of fiduciary duty count, the fraudulent transfer claim,
and the civil conspiracy count, but granted the Trustee leave to
amend; (iii) granted the motion to dismiss the declaratory relief
claim; and (iv) delayed a decision on whether to dismiss the
deepening insolvency count to allow the Delaware Supreme Court to
clarify Delaware law on the issue.

The Trustee filed a Second Amended Complaint on July 19,
2007.  The Defendants filed motions to dismiss that Complaint
under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil
Procedure, which are made applicable to adversary proceedings by
Rule 7012(b) and 7009 of the Federal Rules of Bankruptcy
Procedure, respectively.  The Trustee again opposed the motions.
The motions have been fully briefed and are ripe for decision.


III. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this
adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) &
157(b)(1).  The motions to dismiss the Complaint are core matters

pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), (K), & (O).

IV.    DISCUSSION

    A.    Standard of Review

        1.    Rule 12(b)(6)

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in the plaintiff's complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). To succeed under Rule 12(b)(6), the movant must establish "to a certainty that no relief could be granted under any set of facts which could be proved." Morse v. Lower Merion School Dist., 123 F.3d 902, 906 (3d Cir. 1997) (quoting D.P. Enter., Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984)). "In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004). All reasonable inferences are drawn in favor of the plaintiff. Kost, 1 F.3d at 183. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982). See also Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000); In re OODC, LLC, 321 B.R. 128, 134 (Bankr. D. Del. 2005) (holding that "[g]ranting a motion to dismiss is a 'disfavored' practice . . . . ").

2.   Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The statement must provide the defendant with fair notice of the claim filed against it.  See, e.g., Williams v. Potter, 384 F. Supp. 2d 730, 733 (D. Del. 2005) ("Vague and conclusory factual allegations do not provide fair notice to a defendant.") (citing United States v. City of Phila., 644 F.2d 187, 204 (3d Cir. 1980)).

3.   Rule 9(b)

Where a complaint asserts a claim for fraud, however, the standard for pleading is higher.  The complaint must set forth facts with sufficient particularity to apprise the defendant of the charges against him so that he may prepare an adequate answer.  In re Global Link Telecom Corp., 327 B.R. 711, 718 (Bankr. D. Del. 2005).  To provide fair notice, the complainant must go beyond merely parroting statutory language.  Id.  See also In re Circle Y of Yoakum, Texas, 354 B.R. 349, 356 (Bankr. D. Del. 2006).  A bankruptcy trustee, as a third party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud.  Global Link, 327 B.R. at 717.

B.   <u>MDC Defendants' Motions to Dismiss</u>

1.   <u>Deepening Insolvency Claim</u>

Since the Court's June 2007 Opinion in this case, the Delaware Supreme Court has held that Delaware does not recognize a cause of action for deepening insolvency.  <u>Trenwick Am. Litig. Trust v. Billett</u>, 2007 Del. LEXIS 357, at *1 (Del. 2007), <u>aff'g Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.</u>, 906 A.2d 168 (Del. Ch. 2006).  Therefore, the Court will dismiss Count V of the Trustee's Second Amended Complaint, which is based on that theory.

2.   <u>Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Corporate Waste, and Civil Conspiracy Claims</u>

In the Second Amended Complaint, the Trustee asserts a claim for breach of fiduciary duty against the MDC Defendants.  (Second Am. Compl. ¶¶ 69-71.)  The Trustee contends that "MDC used its power as the majority and controlling shareholder of [the Parent Debtor] to cause its representatives to serve on the Board of Directors of [the Debtors] and on the executive committee of that Board."  (<u>Id.</u> at ¶ 26.)  The Trustee further alleges that the conduct of the MDC Defendants constituted self-dealing and a breach of their fiduciary duties resulting in damages to the Debtors.  (<u>Id.</u> at ¶¶ 70, 71.)  The Trustee asserts that MDC wrongfully prolonged the existence of the Debtors so that MDC could profit at the expense of the Debtors and their creditors, in violation of its duties of good faith, honest governance, and

loyalty which required a prompt bankruptcy filing and liquidation of the Debtors.  As an example, the Trustee points to the April 2003 transaction where the Debtors sold all of their residential treatment centers for $64 million and paid MDC $1.7 million.  In addition, the Trustee asserts that MDC effectuated the July 2004 Restructuring in breach of its fiduciary duty to the Debtors' creditors in order to prefer MDC over non-insider creditors.  Therefore, the Trustee seeks to recover $18 million in damages caused by the Debtors paying TIAA as part of the restructuring.  The Trustee asserts a claim for aiding and abetting a breach of fiduciary duty against any of the MDC Defendants that might be found not to have owed a fiduciary duty to the Debtors at the time of the transactions.  (Id. at ¶¶ 72-74.)

The Trustee also asserts a claim against the MDC Defendants for corporate waste.  The Trustee alleges that the payment of fees to MDC in connection with the April 2003 Transaction and the granting of security interests in which MDC participated "had no rational purpose and were so one-sided that no business person of ordinary sound judgment could believe that the Debtors received adequate consideration in exchange for the payments and/or transfers."  (Id. at ¶ 88.)  The Trustee seeks damages for the full amount paid or transferred to MDC and TIAA as a result of the waste of the Debtors' assets.  (Id. at ¶ 89.)

The Trustee additionally asserts a claim for civil conspiracy contending that MDC, acting through the Director

Defendants,[4] caused the Debtors to retain Winstead to create a
strategy to prefer the interests of MDC over the Debtors' other
unsecured creditors in breach of MDC's fiduciary duty to those
creditors.  (Id. at ¶ 95.)  Pursuant to that agreement, the
Trustee alleges that Winstead counseled the Debtors to engage in
the July 2004 Restructuring to give MDC priority over the claims
of the Debtors' other unsecured creditors.  (Id.)  The Trustee
seeks to hold the MDC Defendants liable for damages and harm to
the Debtors as a result of the alleged conspiracy.  (Id. at ¶
96.)

          a.   Disguised Deepening Insolvency Claim

The MDC Defendants argue that the Trustee's claims for
breach of fiduciary duty, aiding and abetting breach of fiduciary
duty, corporate waste, and civil conspiracy fail to allege
legally cognizable claims or damages.  MDC argues these counts of
the Trustee's Second Amended Complaint rely on a theory of
deepening insolvency for the underlying claims and the measure of
damages.  The MDC Defendants argue that the recent decision by
the Delaware Supreme Court requires dismissal of the Trustee's
claims.  Trenwick, 2007 Del. LEXIS 357, at *1, aff'g 906 A.2d at
204-07 (holding that Delaware does not recognize an independent

---

[4]  The Director Defendants are defined in the Second Amended
Complaint as Naples, Robert Hellman (the CEO of MDC and a
director of the Parent Debtor), and George McCown (the founder of
MDC and a director of the Parent Debtor).  (Second Am. Compl. ¶¶
21-23.)

cause of action for deepening insolvency).  See also In re Radnor Holdings Corp., 353 B.R. 820, 842 (Bankr. D. Del. 2006) (dismissing causes of action for breach of fiduciary duty and aiding and abetting breach of fiduciary duty because "simply calling a discredited deepening insolvency cause of action by some other name does not make it a claim that passes muster.").

The Trustee concedes that Trenwick warrants dismissal of Count V, the claim for deepening insolvency, but asserts that it does not affect the remaining counts of his Second Amended Complaint.  While the Chancery Court in Trenwick had rejected an independent cause of action for deepening insolvency, it noted that the invalidity of that cause of action "does not absolve directors of insolvent corporations of responsibility.  Rather, it remits plaintiffs to the contents of their traditional toolkit, which contains . . . causes of action for breach of fiduciary duty."  Trenwick, 906 A.2d at 205.

The Trustee differentiates the Trenwick decision from this case by noting that the complaint in Trenwick did not allege a breach of fiduciary duty, self-dealing or adequately plead that the company was insolvent at the time of the questioned transactions.  The Chancery Court specifically noted that Delaware law "already requires the directors of an insolvent corporation to consider, as fiduciaries, the interests of the corporation's creditors who, by definition, are owed more than the corporation has the wallet to repay."  Trenwick, 906 A.2d at

13

205 (emphasis added).

The Trustee argues that the MDC Defendants' assertion that his claims are really just disguised claims for deepening insolvency ignores "the critical allegations that [the MDC Defendants] had a fiduciary duty and that they engaged in self-dealing."  These facts, the Trustee argues, make his claims more than just a deepening insolvency claim in disguise.

The Court agrees with the Trustee.  <u>Trenwick</u> required dismissal of the deepening insolvency claim, but cannot be read so broadly as to require dismissal of breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy claims.  The Chancery Court clearly acknowledged that plaintiffs could bring traditional claims against defendants under the latter theories.  <u>Trenwick</u>, 906 A.2d at 205.  Therefore, the Court concludes that <u>Trenwick</u> does not mandate dismissal of the Trustee's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy.

The Court is also not persuaded that the decision in <u>Radnor</u> mandates dismissal of the Trustee's claims.  The <u>Radnor</u> Court noted that the plaintiff's complaint against the board only alleged duty of care violations, not duty of loyalty breaches as alleged in this case.  <u>Radnor</u>, 353 B.R. at 842.  Under Delaware law, a plaintiff asserting a duty of care violation must prove the defendant's conduct was grossly negligent in order to

overcome the deferential business judgment rule.  Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) (holding that gross negligence is the applicable standard of care for director liability under the business judgment rule), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000). Defendants are also offered protection under section 102(b)(7) of the Delaware Code which allows the corporation to indemnify its directors from liability for their breaches of the duty of care. 8 Del. C. § 102 (2008).  Duty of care violations more closely resemble causes of action for deepening insolvency because the alleged injury in both is the result of the board of directors' poor business decision.  To defeat such an action, a defendant need only prove that the process of reaching the final decision was not the result of gross negligence.  Therefore, claims alleging a duty of care violation could be viewed as a deepening insolvency claim by another name.

For breach of the duty of loyalty claims, on the other hand, the plaintiff need only prove that the defendant was on both sides of the transaction.  Weinberger v. UOP, Inc., 457 A.2d 701, 710 (Del. 1983) ("When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain.").  The burden then shifts to the defendant to prove that the transaction was entirely fair.  Id.  This burden is greater than meeting the business judgment rule inherent in

15

duty of care cases.  Further, duty of loyalty breaches are not indemnifiable under the Delaware law.  8 Del. C. § 102(b)(7).

Therefore, the Court concludes that the Trustee's claims for breach of the fiduciary duty of loyalty in the form of self-dealing are not deepening insolvency claims in disguise. Consequently, the <u>Trenwick</u> and <u>Radnor</u> decisions are not controlling.  Accordingly, the Court will deny the MDC Defendants' motion to dismiss the Trustee's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy on this theory.

b.    <u>Damages for Deepening Insolvency</u>

The MDC Defendants contend that deepening insolvency is the only measure of damages used in the Second Amended Complaint with respect to the claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, corporate waste, and civil conspiracy.[5]  The MDC Defendants argue that deepening insolvency is an "impermissible measure of damages" for a claim of breach of fiduciary duty.  <u>Seitz v. Detweiler, Hershey and Associates, P.C. (In re CitX Corp.)</u>, 448 F.3d 672, 677-78 (3d Cir. 2006) (holding that deepening insolvency is not a viable theory of damages for a

---

[5]  MDC cites Paragraph 65 of the Second Amended Complaint which reads: "During the period that Defendants wrongfully perpetuated [the Debtors'] operations and existence, the insolvency of [the Debtors] increased by more than $22 million." (Second Am. Compl. ¶ 65.)  MDC also cites Paragraph 71 which reads: "As a result of the Defendants' breach of their fiduciary duties, [the Debtors] suffered the damages previously alleged."  (<u>Id.</u> at ¶ 71.)

16

malpractice claim).  The MDC Defendants argue that this is
especially true because deepening insolvency is not a cause of
action under Delaware law.

The MDC Defendants further argue that the Trustee's reliance
on deepening insolvency as a measure of the alleged harm to the
Debtors is flawed because the Trustee has not stated what
wrongful conduct was the proximate cause of that damage.  The MDC
Defendants argue that because the Court has previously ruled that
the Trustee cannot avoid the liens and payments made to TIAA,
those liens and payments did not injure the Debtors.  The MDC
Defendants further contend that the Trustee does not allege that
any payments were made on the junior lien granted to certain MDC
Defendants and, therefore, that lien did not cause any injury to
the Debtors.  Finally, the MDC Defendants argue that the
participation interest that certain MDC Defendants purchased from
TIAA did not cause any injury or damage to the Debtors, because
it did not matter whether TIAA retained the full payments made by
the Debtors or paid some of it to the MDC Defendants.  As a
result, the MDC Defendants argue that the Trustee's claims should
be dismissed because the Trustee did not plead any actual damages
to the Debtors other than deepening insolvency.

In response, the Trustee maintains that the amount he seeks
is not exclusively the amount by which the Debtors' insolvency
was deepened.  The Trustee acknowledges that the Second Amended
Complaint alleges that, while the defendants wrongfully

perpetuated the Debtors' existence, "the insolvency increased by
more than $22 million." (Second Am. Compl. ¶ 65.)  The Trustee
argues, however, that he seeks an amount in excess of $22 million
in relief, including $18 million in damages for payments made to
TIAA and MDC because of MDC's self-dealing and breach of
fiduciary duty.  (<u>Id.</u> at ¶ 1.)  The Trustee argues that in the
June 2007 Opinion, the Court acknowledged that the amount paid
pursuant to the July 2004 Restructuring constituted damages which
may be recovered under the breach of fiduciary duty claim.  <u>In re
The Brown Schools</u>, 368 B.R. 394, 400 (Bankr. D. Del. 2007).

     The Trustee also argues that even if the amount by which the
Debtors' insolvency deepened was the only component of damages
sought, those damages are recoverable under a breach of fiduciary
duty theory and should survive a motion to dismiss.  He argues
that the Third Circuit's holding in <u>CitX</u> was that the company's
deepening insolvency was not a viable theory of damages for the
particular claim before that court, a negligence claim for
accounting malpractice.  448 F.3d at 672.  The Trustee argues
that the basis of the <u>CitX</u> Court's decision was that the
plaintiff could not prove actual harm and causation, two
necessary elements of a malpractice claim.  The Trustee argues,
however, that the <u>CitX</u> case does not stand for the broad
proposition that deepening insolvency cannot be a valid theory of
damages for <u>any</u> independent cause of action, especially if those
damages were suffered as a result of the breach of fiduciary duty

18

and other claims he alleges.

The Trustee instead urges this Court to follow the decision in a case whose facts more closely resemble those present here. Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp. I), 353 B.R. 324, 333 (Bankr. D.C. 2006).  In Tuft, the trustee alleged that the defendant directors breached their fiduciary duties of care and loyalty by allowing the company and its subsidiaries to take on additional debt in a fiscally irresponsible manner and by misusing corporate assets.  The Tuft Court, after considering the CitX decision, held that deepening insolvency was a valid theory of damages for the breach of fiduciary duty claim.  Tuft, 353 B.R. at 336-37.

The Court agrees with the Trustee and the reasoning of the Tuft Court.  Consequently, the Court will deny the MDC Defendants' motion to dismiss these claims on this basis.

### c.   Trustee's Standing

The MDC Defendants also argue that the Trustee cannot establish any recoverable damages for deepening insolvency.  See, e.g., In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 576 (S.D.N.Y. 2007) (holding that a company for which liquidation is inevitable suffers no harm by a delay in that liquidation and that the harm caused is harm to the creditors and not the corporation).  The MDC Defendants argue, therefore, that the Trustee cannot allege any legally cognizable injury or damages to the Debtors.

19

The Trustee responds that the MDC Defendants are merely recasting the standing argument advanced in their initial motion to dismiss, which was already rejected by this Court in the June 2007 Opinion that held that "[e]ven though the Trustee's claims incidentally implicate creditors' rights, the Trustee has standing to assert the claims of the Debtors." Brown Schools, 368 B.R. at 400.

The Court noted in its previous Opinion that the Trustee properly has standing to bring these claims. (Id.) The Trustee has adequately alleged damage to the Debtors and therefore the Court will not dismiss the Trustee's claims for lack of standing.

3.   Fraudulent Transfers

The Trustee's Third Claim against the MDC Defendants is for recovery of fraudulent transfers. (Second Am. Compl. ¶¶ 75-86.) The Trustee alleges, in part, that:

> 76.  The Defendants orchestrated, participated in and/or aided and abetted the granting of security interests in property of the Debtors, and the transfer of money and other property directly or indirectly to or for the benefit of MDC and the Law Firm Defendant, and did so with the actual intent to hinder, delay and/or defraud [the Debtors'] creditors. . . .

(Id. at ¶ 76.) The Trustee asserts that the first fraudulent transfer occurred in April 2003 when the MDC Defendants caused the Debtor to pay a $1.7 million advisory fee to two of the MDC Defendants. The Trustee alleges that this transfer was made even though no advisory services were provided beyond those for which those MDC Defendants were previously compensated. Based upon

20

their affiliation with these entities, the Trustee alleges the other MDC Defendants indirectly received the benefit of this payment.

The second alleged fraudulent transfer involves the July 2004 Restructuring.  The Trustee asserts that the MDC Defendants, Naples, and Winstead caused the Debtors to grant TIAA a first lien and MDC a second lien on the Debtors' assets and that MDC directly benefitted from the $18 million paid to TIAA by receiving $1.7 million of it and indirectly benefitted by the improvement in the priority of its second lien.  The Trustee alleges that in exchange for the second lien given to MDC, the Debtors received no benefit but only deepened their insolvency. The Trustee asserts that all of the MDC Defendants directly or indirectly received the benefit of this allegedly fraudulent transfer.

a.   <u>Actual Fraud</u>

i.   <u>April 2003 Sales Transaction</u>

The MDC Defendants argue that the Trustee's claim for actual fraud with respect to the April 2003 sales transaction should be dismissed for failure to state the claim with particularity.  <u>See</u> Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  Specifically, MDC argues that the Trustee merely identified the two MDC Defendants that received the $1.7 million transfer and baldly alleges that the transfer was made

21

with actual intent to hinder or delay the Debtors' creditors.
The MDC Defendants argue that the Trustee fails to allege any
facts supporting this averment, and the Second Amended Complaint
is, therefore, insufficient.  See, e.g., Global Link, 327 B.R. at
718 ("Fair notice requires something more than a quotation from
the statute . . . .") (quoting Hassett v. Zimmerman (In re O.P.M.
Leasing Servs., Inc.), 32 B.R. 199, 204 (Bankr. S.D.N.Y. 1983)).
The MDC Defendants contend that the current allegations are
identical to those in the First Complaint, which the Court held
were insufficient.  See Brown Schools, 368 B.R. at 403-04.

The MDC Defendants also argue that the Trustee is merely
speculating as to the motive of any MDC Defendants, which fails
to satisfy Rule 9(b) as articulated by the Bell Atlantic
plausibility test.  See Bell Atlantic Corp. v. Twombly, 127 S.
Ct. 1955, 1965 (2007) (holding that for a claim of relief to be
plausible on its face, the facts alleged must be "above the
speculative level" and must be more than merely "conceivable").
According to the MDC Defendants, the Trustee failed to provide
facts that would support an argument that the MDC defendants made
the transfer "with actual intent to hinder, delay or defraud any
creditor or debtor."  See 6 Del. C. § 1304(a)(1); 11 U.S.C. §
548(a)(1)(A).

The Trustee argues that the basis for the actual intent
allegations respecting these transfers is sufficiently pled in
revised paragraphs 59 and 75-84 of the Second Amended Complaint

22

(as well as in paragraphs 1 and 50-51).  Specifically, the
Trustee alleges that the fees received by the MDC Defendants are
fraudulent transfers because they were received "during the
wrongful perpetuation of the Debtors' existence and/or while the
breaches of fiduciary duty and other wrongs were being
perpetrated by said Defendants."  (Second Am. Compl. ¶ 77.)  The
Trustee also alleges that in exchange for the fees they paid, the
Debtors received nothing beyond the services for which they had
already paid others.  (Id. at ¶ 76(a).)  The Trustee argues that
the Second Amended Complaint properly pleads facts by alleging
that the intent of the MDC Defendants was to pay themselves cash
for nothing which was an attempt to "hinder, delay or defraud"
the Debtors' other creditors.

       In the June 2007 Opinion, the Court found that one of the
deficiencies in the Trustee's pleadings of actual fraud was that
"the Trustee does little beyond merely reciting elements of
fraud."  Brown Schools, 368 B.R. at 403.  The Court finds that
this deficiency has been corrected in the Second Amended
Complaint, as the Trustee has stated facts which if proven would
establish actual intent to defraud creditors.  Accordingly, the
Court will deny the motion to dismiss the Trustee's claim for
actual fraudulent transfer against the MDC Defendants with
respect to the April 2003 transaction.

ii. <u>July 2004 Restructuring</u>

The MDC Defendants argue that the Trustee has also failed to state a claim for actual fraud in connection with the July 2004 Restructuring. The MDC Defendants argue that after this Court held in the June 2007 Opinion that the Trustee's judicial admissions rendered TIAA's lien and the $18 million in payments made thereunder unavoidable, the Trustee in the Second Amended Complaint merely alleged that the second lien granted to the MDC Defendants was effectuated "to prefer MDC over non-insider creditors . . . as a way to deter legitimate claims from being pursued by [the Debtors'] creditors." (Second Am. Compl. ¶ 59.) They argue that the Trustee has failed to allege any facts to show that the subordinated second lien was granted to MDC with an actual intent to hinder, delay or defraud creditors, rather than simply as part of a restructuring of debt owed to the MDC Defendants, whereby the interest rate was substantially reduced and other concessions were given to the Debtors.

According to the Trustee, the MDC Defendants' argument borders on frivolous because "the act of prioritization itself requires intent." <u>Tuft</u>, 353 B.R. at 345. The Trustee further argues that the Supreme Court's holding in <u>Bell Atlantic</u> does not apply. In <u>Bell Atlantic</u>, the Supreme Court held that a claim under section 1 of the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made," and that merely alleging parallel conduct

24

and a bare assertion of conspiracy will not suffice.  Bell
Atlantic, 127 S. Ct. at 1965.  The Trustee notes that the Supreme
Court emphasized that the Bell Atlantic case was decided in the
context of large costly antitrust litigation and that "a district
court must retain the power to insist upon some specificity in
pleading before allowing a potentially massive factual
controversy to proceed."  Id. at 1967 (citing Associated Gen.
Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 528 n.17
(1983)).  The Trustee argues that these factors are not relevant
in this case.

Therefore, the Court agrees with the Trustee's argument that his
allegations are sufficiently detailed.  The act of seeking a
priority claim may evidence intent to hinder, delay or defraud
other unsecured creditors; the other allegations of the Trustee
about the actions of MDC, if proven, could support a finding of
intent and lend credence to the claim of actual fraud.  (Second
Am. Compl. ¶¶ 57, 59, 76, 79.)  Therefore, the Court will deny
the motion to dismiss the fraudulent transfer claim against the
MDC Defendants with respect to the July 2004 Restructuring.

            b.   Constructive Fraud

In the June 2007 Opinion, the Court dismissed, with leave to
amend, the Trustee's claim for constructive fraud because the
Trustee did not allege which transfers were avoidable or the date
of the transfers.  Additionally, the Court noted that the Trustee
did not allege what value was received in exchange for the

25

transfers or whether Naples, an employee and not a director of

MDC, received any transfers.  Brown Schools, 368 B.R. at 404.

### i.   April 2003 Sales Transaction

The MDC Defendants argue that while the Trustee has pleaded

new facts sufficient to state a constructive fraudulent transfer

claim against two MDC Defendants (MDC-3 and MDC-4) who allegedly

received the $1.7 million transfer, he has failed to state a

claim against the other MDC Defendants.  The MDC Defendants argue

that the Trustee's allegations that the other MDC Defendants

received the benefit of that transfer merely because of their

affiliation with MDC-3 and MDC-4 are insufficient.  (Second Am.

Compl. ¶ 76.)  Specifically, the MDC Defendants argue that the

Trustee never alleges that any other MDC Defendants were initial

transferees, immediate transferees, mediate transferees, or

entities for whose benefit the transfer was made, or any

plausible basis to so conclude.  Therefore, MDC contends that the

Trustee cannot state a claim under section 550 of the Bankruptcy

Code and the constructive fraud claim must be dismissed against

the MDC Defendants, other than MDC-3 and MDC-4.

The Trustee responds that the Second Amended Complaint has

alleged the necessary details that the Court found lacking for

the constructive fraud claims against the MDC Defendants in the

initial Complaint.  Specifically, the Trustee alleged in the

Second Amended Complaint that MDC at all times owned and

controlled the other eleven MDC Defendants and that those

Defendants and the Director Defendants were involved in each of the challenged transactions.  The Trustee also alleged that each of the MDC Defendants who were not directly involved in the specific transfers benefitted from each transfer because of their affiliation with the other MDC Defendants.  (Second Am. Compl. ¶ 76(a)(ii).)

The Trustee's argument is based on the premise that MDC created a network of affiliated companies to deal with the Debtors and argues that it is certainly plausible that each one is culpable in some way for each of the fraudulent transfers. The Trustee further emphasizes that at this stage, he is unable to allege anything more with regard to which entity was actually involved in, or benefitted from, which transaction.  The Trustee seeks the opportunity for discovery to gather more information.

Such speculation is not, however, sufficient to state a cause of action.  The Trustee has stated a cause of action against MDC-3 and MDC-4 for constructive fraud by identifying specific transfers that were made to those entities.  However, the Court concludes that the Trustee has failed to plead sufficient facts from which the Court could conclude that any transfers were made to the other MDC Defendants or that they received any benefit from the transfers to MDC-3 and MDC-4. Therefore, the Court will dismiss the claims for constructive fraud against all MDC Defendants except MDC-3 and MDC-4.

ii. <u>July 2004 Restructuring</u>

The MDC Defendants argue that the Trustee's claim for avoidance of constructive fraud with respect to the July 2004 restructuring identifies only seven of the fifteen MDC Defendants as being involved.  The MDC Defendants argue that the Trustee's blanket allegation that the other eight MDC Defendants "indirectly received the benefit of" that restructuring based strictly on their affiliation is mere conjecture.  Again, the MDC Defendants argue that the Trustee has failed to allege that any of the other eight MDC Defendants were initial transferees, immediate transferees, mediate transferees, or entities for whose benefit the transfer was made and, therefore, that the Trustee cannot state a claim under section 550 of the Bankruptcy Code.

The Trustee makes the same argument for the July 2004 Restructuring as he makes for the April 2003 Sales Transaction. He argues that MDC created the complex network of twelve affiliated companies and that, under these circumstances, it is entirely plausible that each one is culpable in some way for each of the fraudulent transfers.  The Trustee argues that he should be able to pursue discovery and have this matter revisited as appropriate on a motion for summary judgment.

Again, the Court concludes that the Trustee has failed to plead sufficient facts on this issue to rise above a speculative level.  It is insufficient to state a claim for constructive fraud against a party by alleging that the party is an affiliate

of the recipient of the transfer; such a claim ignores the
separateness of corporate entities.  Thus, the Court will dismiss
the claims for constructive fraud against all MDC Defendants
except MDC-2, MDC-5, MDC-6, MDC-7, MDC-8, MDC-9 and MDC-10, who
are identified as having received the alleged fraudulent
transfers.

    4. <u>Aiding and Abetting Actual or Constructive Fraud</u>

  The MDC Defendants argue that the Trustee's claim for aiding
and abetting fraudulent transfers fails and should be dismissed.
They contend that the Third Circuit has never recognized a
distinct cause of action for aiding and abetting a fraudulent
transfer in the corporate context.  In fact, the Delaware Courts
have held that such a cause of action does not exist.  <u>See, e.g.</u>,
<u>Trenwick</u>, 906 A.2d at 203 (dismissing claim because "[d]espite
the breadth of remedies available under state and federal
fraudulent conveyance statutes, those laws have not been
interpreted as creating a cause of action for 'aiding and
abetting' [a fraudulent conveyance]."), <u>aff'd</u> 2007 Del. LEXIS
357, at *1 .  Therefore, the MDC Defendants argue that the
Trustee's attempt to assert such a cause of action cannot be
permitted.

  The Trustee provided no response to the MDC Defendants'
argument on this point.  In his Second Amended Complaint, the
Trustee makes a blanket assertion that "[a]ny Defendant not
liable as a transferee is liable for aiding and abetting the

commission of fraudulent transfers." (Second Am. Compl. ¶ 86.)

Because no such cause of action exists under Delaware law, the Court will dismiss that portion of the Trustee's Third Count that asserts a claim for aiding and abetting fraudulent transfers. Trenwick, 906 A.2d at 203, aff'd 2007 Del. LEXIS 357, at *1.

 C. Naples' Motion to Dismiss

  1. Actual and Constructively Fraudulent Transfers

Defendant Naples argues that the claims against him for actual and/or constructive fraud fail because, despite having amended his pleading, the Trustee's allegations continue to be insufficient and lack the particularity required by Rule 9(b). Bell Atlantic, 127 S. Ct. at 1965. Most significantly, Naples argues that the Trustee does not allege that Naples was a transferee of any of the Debtors' property.

Naples notes that section 550(a) of the Bankruptcy Code states from whom a Trustee may recover an avoidable transfer, specifying "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550. Naples contends that the Second Amended Complaint is devoid of any allegations that he was an initial, immediate or mediate transferee, in connection with any of the transactions.

Naples argues that the phrase "entity for whose benefit such transfer is made" has been limited to circumstances where the

transfer was made to (1) a guarantor of a debtor or (2) a debtor of the initial transferee.  See, e.g., In re Coggin, 30 F.3d 1443, 1453-54 (11th Cir. 1994); Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 57 (2d Cir. 1997); In re Columbia Data Prods., Inc., 892 F.2d 26, 28 (4th Cir. 1989); Bonded Fin. Servs., Inc. v. European Am. Bank, 838 F.2d 890, 895 (7th Cir. 1988).  Naples states that he cannot be a person "for whose benefit such transfer was made" because nowhere in the Second Amended Complaint is it alleged that he is a guarantor or that a debt was paid on his behalf.  Naples argues that the only allegation the Trustee makes with respect to him is in paragraph 76 of the Second Amended Complaint, which states that because of Naples' board membership and/or senior officer position with the Parent Debtor and/or senior officer position with MDC, Naples indirectly received the benefit of the transfers to the other MDC Defendants.  (Second Am. Compl. ¶ 76(a)(iii) & (b)(iii).)

The Trustee again argues that Bell Atlantic is inapplicable to the instant case because it was tailored to large antitrust litigation that called for heightened specificity in pleading. The Trustee contends that the Second Amended Complaint adequately specifies which individual Defendant directly and/or indirectly received which particular transfer.  The Trustee also argues that the Second Amended Complaint alleges that Naples, as a director

of the Parent Debtor, was directly involved in each of the challenged transactions.  The Trustee further alleges that Naples benefitted from each transfer based on his affiliation with the other MDC Defendants.  The Trustee concludes by arguing that, at this stage of the case, he cannot allege anything more without the opportunity for discovery.  The Trustee argues that this matter should be revisited as appropriate on a motion for summary judgment and that Naples' motion to dismiss Count III should be denied.

The Court agrees with Naples and concludes that the Trustee has failed to state a claim for any actual or constructive fraud against Naples and will grant the motion to dismiss as to that claim.  As noted, the Trustee has not identified any transfer made to Naples.  Merely being an employee of a transferee is insufficient, without more, to establish that Naples was the transferee or benefitted from the transfer.

## 2.   Aiding and Abetting Fraudulent Transfers

Naples argues that the aiding and abetting fraudulent transfer claims under Count III should be dismissed as to him because Delaware does not recognize a cause of action for aiding and abetting fraudulent transfers.  See Trenwick, 906 A.2d at 203, aff'd 2007 Del. LEXIS 357, at *1.  The Trustee does not respond to this argument.

For the reasons stated in Part IV.B.4., the Court will grant the motion to dismiss the Trustee's allegations of aiding and abetting fraudulent transfers with respect to Naples.

    3.    <u>Civil Conspiracy and Aiding and Abetting Civil Conspiracy</u>

The Trustee alleges that Naples is liable under a civil conspiracy claim because the MDC Defendants, acting through the Director Defendants including Naples, caused the Debtors to retain Winstead to devise a strategy to prefer the interests of MDC over the Debtors' other unsecured creditors in breach of MDC's fiduciary duty to those creditors.  (Second Am. Compl. ¶ 95.)  Naples argues that the Trustee failed to allege that Naples made any agreements or committed any unlawful acts in furtherance of the alleged conspiracy.

A claim for civil conspiracy requires allegations of (i) a confederation or combination of two or more persons, (ii) an unlawful act in furtherance of the conspiracy, and (iii) actual damages to the plaintiff.  <u>Empire Fin. Servs., Inc. v. Bank of New York (Delaware)</u>, 900 A.2d 92, 97 (Del. 2006).  This Court previously held that Naples, an employee and agent of MDC, could not, as a matter of law, conspire with MDC.  <u>See</u> <u>Brown Schools</u>, 368 B.R. at 409-10.  The Court further found that, because the Trustee did not allege any wrongdoing by TIAA, the Trustee could not allege any conspiracy between TIAA and Naples.  <u>Id.</u> Therefore, the only remaining defendant with whom Naples could

have conspired was Winstead.  The Court granted the Trustee leave
to further amend the Amended Complaint.

Naples argues that the Trustee's current allegations against
him on the civil conspiracy claims are still insufficient.
Naples contends that the only act he is alleged to have taken is
causing the Debtors to retain Winstead as counsel.  Naples
argues, however, that there are no allegations that he himself
made any agreements or engaged in any conduct relating to any
alleged unlawful purpose.  Accordingly, Naples argues that the
Trustee has failed to state a claim for civil conspiracy with
sufficient specificity.

The Court disagrees.  In the Second Amended Complaint, the
Trustee alleges that Naples caused the Debtors to hire Winstead
for the purpose of preferring MDC's interests over the interests
of other creditors.  (Second Am. Compl. ¶ 95.)  The Trustee
further alleges that this purpose was achieved through the July
2004 Restructuring and that Naples participated as a director of
the Debtors in specific acts in furtherance of that
Restructuring.  (Second Am. Compl. ¶¶ 59, 76, 95.)  The Court
concludes that these allegations are sufficient to state a claim
against Naples for civil conspiracy and aiding and abetting civil
conspiracy.  The motion to dismiss these claims will be denied.

4.   In Pari Delicto Doctrine

Naples argues that the Trustee's claims for breach of
fiduciary duty, aiding and abetting breach of fiduciary duty,

34

aiding and abetting fraudulent transfers, corporate waste,
deepening insolvency and civil conspiracy are all barred by the
in pari delicto doctrine and should be dismissed.   The in pari
delicto doctrine states that "a plaintiff may not assert a claim
against a defendant if the plaintiff bears fault for the claim."
Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,
Inc., 267 F.3d 340, 354 (3d Cir. 2001).   This doctrine bars a
claim by a corporation against its officers if the wrongful
conduct that was committed by the corporation's officers can be
imputed to the corporation itself.   Id.   A court will impute the
fraud of an officer or agent to the corporation where the officer
or agent commits the allegedly fraudulent act in the course of
his employment for the benefit of the corporation.   Id.

     Naples argues that his conduct in connection with the April
2003 Sales Transaction, the July 2004 Restructuring, the Inter-
Company Transfers and wrongfully continuing the Debtors'
existence was done in the course of his actions as a director of
the Debtors and conferred significant benefit on the Debtors.
Naples also argues that even if the Debtors did not receive a
benefit from the transactions, the claims are still barred by in
pari delicto under the "sole actor" exception.   Id. at 359.
Because the Trustee alleges that MDC controlled the Debtors
through Naples and the other Director Defendants, MDC was the
"sole actor" for the Debtors.   Therefore, Naples argues their

acts must be imputed to the Debtors and any claim against them is
barred.

The Trustee argues that the in pari delicto argument is
merely an attempt to preserve an argument that the Court has
already rejected.  In the June 2007 Opinion, the Court denied
Winstead's motion to dismiss the breach of fiduciary duty claim
because it was an insider of the Debtors and assisted the Debtors
in carrying out the alleged scheme.  Brown Schools, 368 B.R. at
394.  The Trustee argues that, although the Court did not
expressly refer to the in pari delicto doctrine in doing so, that
doctrine is also not applicable to corporate insiders.  See,
e.g., In re KDI Holdings, Inc., 277 B.R. 493, 518 (Bankr.
S.D.N.Y. 1999) ("[T]he in pari delicto doctrine is inapplicable
where a cause of action is brought against an insider."); In re
Adelphia Commc'ns Corp., 322 B.R. 509, 529 n.18 (Bankr. S.D.N.Y.
2005) ("The [in pari delicto] defense is inapplicable in this
matter because the cause of action is brought against an
insider.").  The Trustee has alleged that Naples is an insider of
the Debtor due to his position on the Debtors' Boards of
Directors.  Therefore, the Trustee argues that the in pari
delicto doctrine is inapplicable and the Court should reject
Naples' argument.

The Court agrees with the Trustee that the in pari delicto
doctrine is not applicable to the Trustee's claims made against
Naples, because the Trustee has alleged that he is a corporate

36

insider.  <u>See, e.g.</u>, <u>In re Oakwood Homes Corp.</u>, 340 B.R. 510, 536
(Bankr. D. Del. 2006) ("<u>In pari delicto</u> does not provide a
defense for insiders.").  As a result, the Court will deny
Naples' motion to dismiss the claims of breach of fiduciary duty,
aiding and abetting breach of fiduciary duty, aiding and abetting
fraudulent transfers, corporate waste, deepening insolvency, and
civil conspiracy claims on that basis.

     D.   <u>Winstead's Motion to Dismiss</u>

          1.   <u>Breach of Fiduciary Duty, Aiding and Abetting</u>
              <u>Breach of Fiduciary Duty, and Conspiracy Claims</u>

Winstead argues that the Trustee's claims for breach of
fiduciary duty, aiding and abetting breach of fiduciary duty, and
conspiracy are no more than deepening insolvency claims that
should be dismissed because Delaware does not recognize such a
cause of action.  <u>Trenwick</u>, 2007 Del. LEXIS 357, at *1, <u>aff'g</u> 906
A.2d 168.  Winstead further contends that the only damages
allegedly caused by Winstead are for deepening insolvency and
therefore the Trustee's claims should be dismissed.

For the reasons stated in Part IV.B.2. above, the Court will
deny Winstead's motion.  While <u>Trenwick</u> holds that there is no
independent cause of action for deepening insolvency, it does not
require the dismissal of the claims against Winstead for breach
of fiduciary duty, aiding and abetting breach of fiduciary duty,
and conspiracy.  Further, as the Court concluded above, the

Trustee has alleged sufficient harm to the Debtors to withstand a motion to dismiss.

### 2.   Fraudulent Transfers

The Trustee has asserted that Winstead is liable for two fraudulent transfers under an actual or constructive fraud theory.  The first is the Debtors' grant of a first lien to TIAA and a second lien to MDC in July 2004.  The second is the Debtors' payment of legal fees to Winstead during the two years prior to the Debtors' bankruptcy proceedings.  Winstead argues that both claims should be dismissed.

### a.   Actual Fraud

### i.   July 2004 Restructuring

Winstead argues that the Trustee's claim against it for a fraudulent transfer stemming from its advising the Debtors during the July 2004 Restructuring fails for three reasons.  First, Winstead argues that the claim is barred by the Court's June 2007 Opinion to the extent that the claim challenges the first lien granted by the Debtors to TIAA.  In that decision, the Court held that the first lien is not avoidable and its creation is not actionable under section 550.  Winstead argues that the Trustee must be able to avoid the transfer before he can seek to recover the property or its value from the initial transferee, the subsequent transferee, or the entity for whose benefit the transfer was made.  See, e.g., IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.), 408 F.3d 689, 703 (11th Cir. 2005).

Winstead further argues that the claim fails because the Trustee did not allege that the Debtors paid the MDC Defendants anything on their second lien.  Winstead argues that this omission shows that the Trustee has not alleged that the second lien granted to MDC depleted the Debtors' estates.  Therefore, Winstead contends that the Trustee has not stated a valid fraudulent transfer claim against Winstead.

The Trustee argues that Winstead has misunderstood his request for damages.  The Trustee is not seeking to recover the $18 million paid to TIAA as a fraudulent conveyance under section 550(a), but rather is seeking $18 million in damages for the Defendants' breach of fiduciary duty.  The Trustee has alleged that the MDC Defendants and Naples engaged in self-dealing, in breach of their fiduciary duty to the Debtors' creditors.  The Trustee has further alleged that Winstead aided, abetted and substantially assisted the other Defendants in effectuating the July 2004 Restructuring, in breach of their fiduciary duties. Therefore, the Trustee argues that his claim for recovery of damages in the amount paid to satisfy the first lien to TIAA on a breach of fiduciary duty claims is not barred by the Court's prior opinion.

The Court agrees with the Trustee and finds that he states a claim for breach of fiduciary duty and fraud and is entitled to present evidence of the amount of damages caused thereby.

ii. <u>Fees Paid</u>

In the Second Amended Complaint, the Trustee alleges that Winstead directly received a benefit from the July 2004 Restructuring, namely the $100,000 fee it received for advising the Debtors to engage in the July 2004 Restructuring and the $600,000 in legal fees it received for defending suits brought against the Debtors.  (Second Am. Compl. ¶ 76(b)(iv).)

This claim was dismissed with leave to replead in the June 2007 Opinion because the Trustee had not "allege[d] enough facts from which the Court [could] conclude that the payment [of the fees] was for less than reasonably equivalent value or was to hinder, delay, or defraud the Debtors' creditors."  <u>Brown Schools</u>, 368 B.R. at 413-14.

Winstead argues that the Trustee's Second Amended Complaint suffers from the same deficiencies as the first.  Winstead contends that the Trustee has still not alleged any facts supporting a conclusion that in paying Winstead's legal fees, the Debtors intended to hinder, delay or defraud their creditors. Winstead argues that the Second Amended Complaint, much like the First Amended Complaint, "does little beyond merely reciting the elements of fraud."  <u>Id.</u> at 403.  <u>See also</u> <u>In re Crazy Eddie Sec. Litig.</u>, 802 F. Supp. 804, 816 (E.D.N.Y. 1992) (dismissing actual fraud claim against auditor because the conclusory assertion that "payments to [the auditor] were part of a scheme to defraud other creditors ha[d] not been supported by any facts suggesting that

40

[the debtor] made those payments for the purpose of defrauding other creditors."). Therefore, Winstead argues that the claims for actual fraud relating to payment of its fees should be dismissed.

The Trustee argues that the facts pleaded support his claim that Winstead received its fees knowing that they were payment for helping MDC receive priority over the Debtors' other creditors thereby hindering or defrauding those creditors. First, the Trustee alleges that Winstead took on the representation of the Debtors because of its partner's close friendship with Defendant McCown. Next, the Trustee alleges that Winstead knew that the Debtors were insolvent and nonetheless caused the Debtors to serve MDC's interests by aiding in the July 2004 Restructuring, which was intended to encumber the Debtors' assets in favor of MDC and hinder creditors from satisfying legitimate claims against the Debtors. (Second Am. Compl. ¶¶ 57-59.) The Trustee alleges a memo written by the Winstead partner evidences precisely that intent. (Id. at ¶ 59.)

The Court finds that the Second Amended Complaint pleads sufficient facts to support a claim that Winstead received fees from the Debtors knowing and intending that they were payment for helping MDC hinder the Debtors' other creditors. These allegations support a claim to avoid the payment of those fees as fraudulent conveyances. See, e.g., In re Interco Systems, Inc., 202 B.R. 188, 193 n.4 (Bankr. W.D.N.Y. 1996) (if "a corporation

knowingly paid professional fees for a transaction intended to
solely benefit a principal so as to remove assets from the
corporation otherwise available to creditors, especially if an
intent was discussed with or otherwise made known to the entity
providing the services, doing the billing and receiving payment,
an avoidable fraudulent conveyance under Section 548(a)(1) could
be proven.")  Therefore, the Court will deny Winstead's motion to
dismiss this count.

b.   <u>Constructive Fraud</u>

Winstead further contends that the Trustee has failed to
state a claim against Winstead for constructive fraud.  Winstead
argues that to establish constructive fraud, the Trustee must
show that the challenged transfer was made for less than a
"reasonably equivalent value."  11 U.S.C. § 548(a)(1)(B).

The Trustee alleges that the Debtors did not receive
reasonably equivalent value for the payment of fees to Winstead
because those fees were "made as part of an effort to aid, abet
and facilitate the breach of fiduciary duties owed to the
Debtors, and to hinder, delay and defraud non-insider creditors
of the Debtors." (Second Am. Compl. ¶ 79.).

Winstead argues that this conclusion is erroneous because
there is no basis for concluding that either the Debtors paid
Winstead for services it did not perform or that the Debtors paid
Winstead more than its services were worth.  <u>See</u> <u>Interco</u>, 202
B.R. at 192-94 (determining that trustee did not meet his burden

42

of showing that the debtor received less than reasonably equivalent value in exchange for services that a law firm performed where trustee did not allege (1) that the firm did not perform services which debtor requested it perform or (2) that the services performed were not reasonably worth the amount billed).  Winstead contends that the Trustee's Second Amended Complaint fails to allege facts from which the Court may conclude that the payment of legal fees to Winstead was for less than reasonably equivalent value and, therefore, the claim for recovery of the alleged constructively fraudulent transfers should be dismissed.

The Trustee provided no response the Winstead's argument on this point.  However, in the Second Amended Complaint, the Trustee alleges that the services rendered by Winstead in connection with the 2004 Restructuring did not benefit the Debtors but instead caused MDC to receive a preferred claim over other unsecured creditors at a time when the Debtors' bankruptcy and liquidation were inevitable.  (Second Am. Compl. ¶¶ 76, 79.) Consequently, the Court concludes that the Trustee has alleged sufficient facts from which it may conclude that the value of Winstead's services to the Debtors was less than reasonably equivalent to the legal fees paid to Winstead.  Accordingly, the Court will deny Winstead's motion to dismiss the constructive fraud claim.

### 3.    Aiding and Abetting Fraudulent Transfers

The Trustee does not allege that Winstead was a transferee in the July 2004 Restructuring.  Instead, the Trustee alleges that Winstead aided and abetted the other Defendants in designing and carrying out the restructuring.  (Second Am. Compl. ¶¶ 76, 78, 86.)

Winstead argues that neither federal bankruptcy law nor Delaware law recognizes liability for aiding a fraudulent transfer.  See, e.g., Mack v. Newton, 737 F.2d 1343, 1357 (5th Cir. 1984) (recovery under the Bankruptcy Code does not extend to permit judgment against one who did not receive the property transferred); Jackson v. Star Sprinkler Corp. of Florida, 575 F.2d 1223, 1234 (8th Cir. 1978) (same); Elliott v. Glushon, 390 F.2d 514, 516 (9th Cir. 1967) (same); Trenwick, 906 A.2d at 203 (holding that there is no cause of action for 'aiding and abetting' a fraudulent conveyance), aff'd 2007 Del. LEXIS 357, at *1.

For the reasons stated in Part IV.B.4. above, the Court agrees with Winstead and will dismiss the count against it for aiding and abetting a fraudulent transfer.

### V.    CONCLUSION

For the foregoing reasons, the Court concludes that the Defendants' motions to dismiss will be granted in part.

An appropriate Order is attached.


Dated: April 24, 2008                BY THE COURT:


                                     Mary F. Walrath
                                     United States Bankruptcy Judge